MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley (Bar No. 168181)
eric.meckley@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: +1.415.442.1000

Jeremy P. Blumenfeld (admitted *pro hac vice*)
jeremy.blumenfeld@morganlewis.com
Brian W. Sullivan (admitted *pro hac vice*)
brian.sullivan@morganlewis.com
2222 Market Street
Philadelphia, PA 19103-3007
Tel: +1.215.963.5000

MORGAN, LEWIS & BOCKIUS LLP
Christopher J. Boran (admitted *pro hac vice*)
christopher.boran@morganlewis.com
110 North Wacker Drive, Suite 2800
Chicago, IL 60606-1511
Tel: +1.312.324.1000

Abbey M. Glenn (Bar No. 267751)
abbey.glenn@morganlewis.com
1111 Pennsylvania Ave, NW
Washington, DC 20004-2541
Tel: +1.202.739.3000

Attorneys for Defendants

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| NICHOLAS CALDWELL,<br><br>             Plaintiff,<br>     vs.<br><br>ELON MUSK, ET AL.,<br><br>             Defendants. | Case No. 3:24-cv-02022-MMC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT'S SECOND CAUSE OF ACTION**<br><br>Hearing Date: August 30, 2024<br>Time: 9:00 AM<br>Location: Courtroom 7, 19th Floor<br>Hon. Maxine M. Chesney<br><br>Complaint Filed: April 3, 2024 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Please take notice that on August 30, 2024 at 9:00 AM or as soon thereafter as counsel may be heard, before the Honorable Maxine Chesney of the San Francisco Courthouse of the above-captioned court, located at 450 Golden Gate Avenue, Courtroom 7 – 19th Floor, San Francisco, CA 94102, Defendants Elon Musk; X Corp.; Twitter, Inc. Change of Control and Involuntary Termination Protection Policy; Twitter, Inc. Change of Control Severance and Involuntary Termination Protection Policy; Lindsay Chapman; Brian Bjelde; and Dhruv Batura (collectively, "Defendants") will, and hereby do, move this Court, pursuant to Fed. R. Civ. P. 12(b)(6), for an order dismissing the Second Cause of Action of the Complaint for Severance Benefits, Equitable Relief, and Statutory Penalties (ERISA) ("Complaint") filed by Plaintiff Nicholas Caldwell ("Plaintiff"), for failure to state a claim upon which relief can be granted. This motion is based on the following grounds:

1. The Second Cause of Action of the Complaint against Defendants Musk and X Corp. under ERISA section 510, 29 U.S.C. § 1140, fails to state a claim because the only relief Plaintiff seeks—"restitution, disgorgement, front pay and/or equitable surcharge"—are not "equitable" or "appropriate," and are not available to him on the facts alleged, as a matter of law. 29 U.S.C. § 1132(a)(3).

2. The Second Cause of Action against Defendants Musk and X Corp. under ERISA section 510, 29 U.S.C. § 1140, also fails because it is foreclosed by Plaintiff's claims in the First Cause of Action for severance benefits under ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

Defendants request that the Court dismiss the Second Cause of Action without leave to amend. This Motion to Dismiss is based on this Notice of Motion, the Memorandum of Points and Authorities, the pleadings on file herein, and such arguments and admissible evidence as may be presented at the time of the hearing.

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

- 1 -

MOTION TO DISMISS SECOND CAUSE OF ACTION OF COMPLAINT
CASE NO. 3:24-cv-02022-MMC

Dated: June 17, 2024

MORGAN, LEWIS & BOCKIUS LLP

By  */s/ Christopher Boran*
    Christopher Boran
    Eric Meckley
    Jeremy Blumenfeld
    Abbey Glenn
    Brian Sullivan

Attorneys for Defendants
ELON MUSK; X CORP.; TWITTER, INC. CHANGE OF CONTROL AND INVOLUNTARY TERMINATION PROTECTION POLICY; TWITTER, INC. CHANGE OF CONTROL SEVERANCE AND INVOLUNTARY TERMINATION PROTECTION POLICY; LINDSAY CHAPMAN; BRIAN BJELDE; AND DHRUV BATURA

- 2 -

MOTION TO DISMISS SECOND CAUSE OF ACTION OF COMPLAINT
CASE NO. 3:24-cv-02022-MMC

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## TABLE OF CONTENTS

Page

I.  INTRODUCTION ............................................................................................................. 1

II. RELEVANT BACKGROUND ....................................................................................... 2

    A. The Plan ............................................................................................................... 2

    B. Plaintiff, His Administrative Claim and Appeal, And The Complaint ................. 3

III. ARGUMENT .................................................................................................................. 5

    A. Legal Standard ..................................................................................................... 5

    B. The Second Cause Of Action Should Be Dismissed Because Plaintiff's Requested Remedies Are Not Equitable As A Matter Of Law ............................. 5

        1. Surcharge Is Not Available to Plaintiff as Appropriate Equitable Relief .................................................................................................. 6

        2. Plaintiff's Claims for Restitution and Disgorgement Are Not Appropriate Equitable Relief ....................................................................... 8

        3. The Complaint's Allegations Demonstrate That Plaintiff Cannot Recover Front Pay ........................................................................ 10

    C. The Second Cause Of Action Fails Because It Is Unavoidably Foreclosed By The First Cause Of Action .......................................................... 10

IV. CONCLUSION ............................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abatie v. Alta Health & Life Ins. Co.*,
  458 F.3d 955 (9th Cir. 2006) .................................................................................................. 3

*Acosta v. Brain*,
  910 F.3d 502 (9th Cir. 2018) .................................................................................................. 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................... 5

*Berman v. Microchip Tech. Inc.*,
  2018 WL 732667 (N.D. Cal. Feb. 6, 2018), *rev'd on other grounds*, 838 F.
  App'x 292 (9th Cir. 2021) ...................................................................................................... 6

*Chambers v. Travelers Cos., Inc.*,
  668 F.3d 559 (8th Cir. 2012) ............................................................................................ 2, 11

*CIGNA Corp. v. Amara*,
  563 U.S. 421 (2011) ............................................................................................................... 6

*Del Castillo v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*,
  2019 WL 6841222 (N.D. Cal. Dec. 16, 2019) .................................................................... 8, 9

*Depot, Inc. v. Caring for Montanans, Inc.*,
  915 F.3d 643 (9th Cir. 2019) .......................................................................................... *passim*

*Dzinglski v. Weirton Steel Corp.*,
  875 F.2d 1075 (4th Cir. 1989) ................................................................................................ 7

*Firestone Tire & Rubber Co. v. Bruch*,
  489 U.S. 101 (1989) ............................................................................................................... 3

*Foster v. Adams & Assocs., Inc.*,
  2020 WL 3639648 (N.D. Cal. July 6, 2020) ...................................................................... 7, 8

*Gabriel v. Alaska Elec. Pension Fund*,
  773 F.3d 945 (9th Cir. 2014) .......................................................................................... 6, 7, 8

*Lillywhite v. AECOM*,
  2020 WL 13628211 (W.D. Wash. Dec. 23, 2020) ............................................................... 11

*McBean v. United of Omaha Life Ins. Co.*,
  2019 WL 1508456 (S.D. Cal. Apr. 5, 2019) .......................................................................... 7

*Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- ii -

MOTION TO DISMISS SECOND CAUSE OF ACTION OF
COMPLAINT
CASE NO. 3:24-cv-02022-MMC

*Pendelton v. QuickTrip Corp.*,
   577 U.S. 136 (2016) ............................................................................................................ 8, 9

*Pendelton v. QuickTrip Corp.*,
   567 F.3d 988 (8th Cir. 2009) .................................................................................................. 11

*Spinelli v. Gaughan*,
   12 F.3d 853 (9th Cir. 1993) ...................................................................................................... 6

*Teurner v. Gen. Motors Corp.*,
   34 F.3d 542 (7th Cir. 1994) .................................................................................................... 11

*Teutscher v. Woodson*,
   835 F.3d 936 (9th Cir. 2016) .................................................................................................. 10

**Statutes**

29 U.S.C. § 1001(21)(A) ................................................................................................................ 7

29 U.S.C. § 1132(a)(3) .......................................................................................................... 1, 5, 6

29 U.S.C. §§ 1132(a)(3) and 1140 ............................................................................................... 12

ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) ..................................................... *passim*

ERISA section 502(a)(3) .................................................................................................... 6, 7, 10

ERISA section 502(c) ................................................................................................................... 5

ERISA section 510, 29 U.S.C. § 1140 ................................................................................ *passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ...................................................................... 2, 5, 6, 12

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- iii -

MOTION TO DISMISS SECOND CAUSE OF ACTION OF COMPLAINT
CASE NO. 3:24-cv-02022-MMC

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

Plaintiff joined Twitter in June 2020.  Less than two years later, a merger was announced whereby Twitter would be purchased by entities associated with Elon Musk.  The merger agreement was inked on April 25, 2022.  After the merger agreement and its stand-still provision took effect, Plaintiff executed an agreement to participate in the Twitter, Inc. Change of Control and Involuntary Termination Protection Policy ("Plan"), which provided severance benefits to certain Twitter employees.  The Twitter merger consummated on October 27, 2022, after which Plaintiff was terminated.

Plaintiff subsequently submitted a claim for benefits under the Plan, which he alleges amounts to $19.2 million.  His claim was decided by an independent administrator that was conferred full discretion to interpret the Plan and decide claims for Plan benefits.  The Plan administrator denied Plaintiff's claim in a detailed and exhaustive decision finding he was terminated "for Cause" under the Plan and thus ineligible for severance benefits.  As is ordinary in benefit-denial cases, the central question here is whether the administrative decision was reasonable as opposed to an abuse of discretion.  That is exactly what the Complaint's First Cause of Action concerns, which is the claim at the crux of this litigation.

Plaintiff's Second Cause of Action claims that Defendants Musk and X Corp. terminated Plaintiff's employment for the purpose of interfering with his alleged right to severance benefits under the Plan in violation of ERISA section 510, 29 U.S.C. § 1140.  For this claim, Plaintiff requests what he describes as equitable relief: surcharge, restitution, disgorgement, and front pay.  As a matter of law, however, none is available to him, warranting dismissal of the Second Cause of Action.

First, none of Plaintiff's requested relief is "appropriate equitable relief" under ERISA.  29 U.S.C. § 1132(a)(3).  Surcharge is available only to remedy breaches of fiduciary duty under ERISA, but the Complaint does not allege that Musk or X Corp. breached their fiduciary duties.  Nor could it.  The decision to terminate an employee is not fiduciary conduct under ERISA and thus cannot constitute a breach of fiduciary duty.  Meanwhile, restitution and disgorgement require

"specifically identifiable property or its traceable proceeds," which is not alleged—and does not exist—here. Plaintiff seeks to recover severance benefits that are paid from the company's general assets, which is not a permissible form of *equitable* (as opposed to legal) restitution. Finally, Plaintiff's claim to "front pay" fails because he alleges that he not only intended to resign but supposedly did resign after the Twitter merger closed. Such allegations foreclose any suggestion that Plaintiff was *reasonably certain* to remain employed at Twitter for years into the future and beyond any trial in this case, but for his allegedly unlawful termination. These allegations make "front pay" a nonstarter.

Second, the Court should also dismiss the Second Cause of Action because it is foreclosed by the First Cause of Action. In the First Cause of Action, Plaintiff brings a claim under ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), seeking an award of severance benefits "in accordance with the terms of the Plan," based on allegations that the Plan administrator wrongly determined that Plaintiff was terminated "for Cause" and, thus, had no right to severance benefits under the Plan. Defendants do not seek dismissal of that claim at this stage, and anticipate the parties will litigate that claim based on the administrative record. But even assuming Plaintiff could prevail on his section 502(a)(1)(B) claim, it would necessarily result in the *release* of his section 510 claim in the Second Cause of Action because the "terms of the Plan" expressly condition any payment of benefits on the participant executing a full "release of claims." On the flipside, if the Court agrees that the Plan's administrators properly concluded that Plaintiff was terminated "for Cause" and thus had no right to severance benefits under the Plan, this too will foreclose his section 510 claim. "In either event, no § 510 'interference' claim will lie." *Chambers v. Travelers Cos.*, 668 F.3d 559, 567 (8th Cir. 2012).

For these reasons and as discussed further below, the Court should dismiss the Complaint's Second Cause of Action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## II.  RELEVANT BACKGROUND

### A.  The Plan

The Plan provided specifically-defined severance benefits to a "select group of key Twitter" employees, in the "event their employment is negatively affected by a change of control at Twitter."

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 2 -

MOTION TO DISMISS SECOND CAUSE OF ACTION OF
COMPLAINT
CASE NO. 3:24-cv-02022-MMC

Dkt. 1, Ex. 1 at ECF Page 28 of 74. Under the terms of the Plan, benefits are available to participants when their employment ended as a result of "Involuntary Termination" during a "Change of Control Period." *Id*. The payment of benefits under the Plan is contingent on the participant first signing a standard "separation agreement and release of claims." *Id*. at ECF Page 29 of 74 (detailing the "Release Requirement").

Under the Plan, participants are not eligible for benefits if their employment is terminated "for Cause." *Id*. at ECF Pages 28-29 of 74. As relevant here, "Cause" includes "gross negligence or willful misconduct in the performance of [the employee's] duties[.]" *Id*. at ECF Page 29 of 74. Meanwhile, participants who resign during a Change of Control Period are still eligible for benefits, so long as they provide at least 30-days' written notice that they are resigning "for Good Reason," within the meaning of the Plan, and thereafter sign a "separation agreement and release of claims." *Id*. at ECF Pages 28-30 of 74.

The Plan expressly provides that any designated "Administrator will have full discretion to administer and interpret the Plan," and that "[a]ny decision made or action taken by the Administrator with respect to the [Plan], and any interpretation by the Administrator of any term or condition of the [Plan], or any related document, will be conclusive and binding on all persons and be given the maximum possible deference allowed by law." *Id*. at ECF Page 32 of 74. Thus, any decision by the Administrator is subject to abuse of discretion review in this Court. *See, e.g.*, *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 967 (9th Cir. 2006) ("We read *Firestone* to require abuse of discretion review whenever an ERISA plan grants discretion to the plan administrator[.]").

The company funds the Plan, and any benefits paid pursuant to the Plan are paid by the company. Dkt. 1, Ex. 1 at ECF Page 34 of 74 ("The cost of the [Plan] is paid by the Company.").

**B.     Plaintiff, His Administrative Claim and Appeal, And The Complaint**

Plaintiff was formerly employed by Twitter, holding two positions during his brief tenure with the company: General Manager of the Core Tech, and VP of Engineering for the Consumer ("BlueBird") organization. Compl. ¶¶ 5, 20. On December 31, 2021, Plaintiff assumed the VP of Engineering role and became a member of Staff (i.e., the Twitter executive leadership team), a

1  prerequisite to being considered for participation in the Plan. *Id*. ¶¶ 20, 53. On April 25, 2022, the
2  merger agreement whereby Musk-related entities agreed to purchase Twitter was executed. *Id*. ¶
3  28. Subsequently, on May 11, 2022, Plaintiff signed an agreement to participate in the Plan. *Id*. ¶
4  24.

5        After the Twitter merger closed, Plaintiff was terminated for Cause on November 27, 2022.
6  Compl. ¶¶ 30, 36. Plaintiff alleges that before then, on October 28, 2022, he informed the company
7  he was resigning for Good Reason pursuant to the Plan. *Id.* ¶ 33. He further alleges that his
8  voluntary resignation took effect on November 27, 2022. *Id.* ¶¶ 77, 88. Plaintiff's tenure at Twitter
9  lasted for approximately two and a half years. *Id*. ¶¶ 5, 20.

10        On December 30, 2022, Plaintiff submitted, through counsel, a formal claim for benefits
11  under the Plan. Compl. ¶ 38. The designated Plan administrator, Lindsay Chapman ("Plan
12  Administrator"), denied the claim in a 39-page letter dated June 15, 2023. *See id*. ¶ 40. The Plan
13  Administrator concluded that Plaintiff was terminated for "Cause" based on gross negligence or
14  willful misconduct, including improperly approving retention bonuses in violation of the merger
15  agreement. *Id*. ¶¶ 40-41. On October 9, 2023, Plaintiff submitted an appeal, arguing that the Plan
16  Administrator erred in concluding that he was terminated for Cause, and that his resignation for
17  Good Reason "was valid and effective" before he was terminated. *See id*. ¶¶ 45, 48. The appeal
18  was reviewed by the Twitter Severance Administration Committee ("Committee"). *Id*. ¶ 49. On
19  February 6, 2024, the Committee issued a detailed opinion addressing Plaintiff's arguments and the
20  evidence offered in support, denying Plaintiff's appeal. *Id*. ¶¶ 49, 51.

21        Plaintiff then filed his Complaint in this Court, asserting the following claims:

22        ***Claim for Benefits.*** In the First Cause of Action, Plaintiff asserts a claim for severance
23  benefits under the Plan pursuant to section 502(a)(1)(B) of ERISA. Compl. ¶¶ 70-73. Through
24  this claim, Plaintiff seeks an order declaring that the denial of his claim for benefits under the Plan
25  was contrary to the terms of the Plan, and further ordering that Plaintiff be paid severance benefits
26  in accordance with the terms of the Plan. *Id.*, Prayer for Relief ¶¶ 1-2.

27        ***Claim for Equitable Relief***. In the Second Cause of Action, Plaintiff brings a claim under
28  section 510 of ERISA, to recover from Musk and X Corp. "appropriate equitable relief" based on

the decision to terminate his employment.  Compl. ¶¶ 75-81.

***Claim for Statutory Penalties.***  In the Third Cause of Action, Plaintiff seeks to recover statutory penalties from Musk and the Plan Administrator under ERISA section 502(c) based on their alleged failure timely to provide Plaintiff with certain documents in connection with his claim for benefits and related appeal.  Compl. ¶¶ 83-86.

***Breach of Contract Claim***.  In the Fourth Cause of Action, Plaintiff alleges that X Corp. breached various agreements by failing to pay Plaintiff certain equity awards.  Compl. ¶¶ 88-90.

***Breach of the Implied Covenant of Good Faith and Fair Dealing***.  In the Fifth Cause of Action, Plaintiff alleges that X Corp. breached an implied duty of good faith and fair dealing when failing to pay certain equity awards.  Compl. ¶¶ 92-94.

This Motion addresses the Second Cause of Action.  There, Plaintiff alleges that Musk and X Corp. terminated his employment "with the specific intent of preventing him from obtaining benefits to which he was entitled under the Plan" in violation of section 510 of ERISA.  Compl. ¶ 78.  Based on this, Plaintiff seeks purported "equitable relief," including "restitution, disgorgement, front pay and/or equitable surcharge."  *Id.* ¶ 81 & Prayer for Relief ¶ 4.

### III.   ARGUMENT

#### A.   Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Under this standard, claims seeking "equitable relief" that is not properly awarded under ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), must be dismissed.  *See, e.g.*, *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 665 (9th Cir. 2019) (affirming dismissal because the "plaintiffs [were] not seeking 'appropriate equitable relief' under 29 U.S.C. § 1132(a)(3)").

#### B.   The Second Cause Of Action Should Be Dismissed Because Plaintiff's Requested Remedies Are Not Equitable As A Matter Of Law

ERISA section 510 makes it unlawful to terminate the employment of a plan participant for "the purpose of interfering with the attainment of any right to which such participant may become

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

- 5 -

MOTION TO DISMISS SECOND CAUSE OF ACTION OF COMPLAINT
CASE NO. 3:24-cv-02022-MMC

entitled under the plan[.]" 29 U.S.C. § 1140.  A terminated participant can seek "redress" for an alleged violation of section 510 through the enforcement provision prescribed in section 502(a)(3) of ERISA, which provides "appropriate equitable relief" to "redress such violations[.]" 29 U.S.C. § 1132(a)(3); *Spinelli v. Gaughan*, 12 F.3d 853, 856 (9th Cir. 1993) ("[S]ection 510 incorporates the remedies of section 502, which in turn authorizes an aggrieved participant . . . to bring a civil action . . . to obtain . . . appropriate equitable relief[.]") (citation omitted).

However, an ERISA "claim fails if the plaintiff cannot establish . . . that the remedy sought is 'appropriate equitable relief' under § 1132(a)(3)(B), regardless of whether a remediable wrong has been alleged.'" *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 954 (9th Cir. 2014) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254 (1993)).  Here, Plaintiff seeks the following forms of purported equitable relief: surcharge, restitution, disgorgement, and front pay.  Compl. ¶ 81, Prayer for Relief ¶ 4.[1]  As the Ninth Circuit has recognized, regardless of how a plaintiff characterizes the relief sought, courts must "look to the substance of the remedy sought rather than the label placed on that remedy." *Depot*, 915 F.3d at 661 (internal quotations and citation omitted).  As the Complaint's allegations demonstrate, none of the requested forms of relief are available to Plaintiff as a matter of law, and his Second Cause of Action should be dismissed.  *See* Fed. R. Civ. P. 12(b)(6).

### 1. Surcharge Is Not Available to Plaintiff as Appropriate Equitable Relief

Although the Ninth Circuit has recognized that "surcharge" is a form of equitable relief that may properly be awarded in certain ERISA cases, this is not one of them.  Under binding precedent, an "equitable surcharge" is properly awarded only to remedy a breach of fiduciary duty.  *CIGNA*

---

[1] While Plaintiff seeks a declaration that he is entitled to benefits under the Plan, this is not a request for equitable relief under ERISA section 502(a)(3), and Plaintiff does not appear to allege otherwise.  *Compare* Compl., Prayer for Relief ¶ 1 (requesting the above "[d]eclaration") *with id.* ¶ 4 (requesting "equitable relief" in the form of "restitution, disgorgement, front pay and/or equitable surcharge").  Rather, the requested declaration "is nothing more than a request for the Court to 'clarify [Plaintiff's] rights to . . . benefits under the terms of the plan'—relief for which ERISA provides under section 502(a)(1)(B)," *Berman v. Microchip Tech. Inc.*, 2018 WL 732667, at *11 (N.D. Cal. Feb. 6, 2018), *rev'd on other grounds*, 838 F. App'x 292 (9th Cir. 2021), and which Plaintiff seeks through the First Cause of Action, Compl. ¶¶ 70-71, Prayer for Relief ¶ 1.

*Corp. v. Amara*, 563 U.S. 421, 442 (2011) (explaining that a "surcharge" is monetary relief that might be "equitable" within the meaning of ERISA, but only when awarded to remedy "a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary."); *Gabriel*, 773 F.3d at 957-58 (same).  Accordingly, claims seeking to impose an equitable surcharge for ERISA violations that do *not* constitute a breach of fiduciary duty are properly dismissed because they do not seek "appropriate equitable relief" under section 502(a)(3). *See, e.g.*, *id.*; *Foster v. Adams & Assocs., Inc.*, 2020 WL 3639648, at *8 (N.D. Cal. July 6, 2020) (dismissing claims seeking an equitable "surcharge" award under section 502(a)(3) against *non-fiduciary* defendants, because surcharge is "appropriate equitable relief" only for a breach of fiduciary duty); *see also McBean v. United of Omaha Life Ins. Co.*, 2019 WL 1508456, at *7, *10 (S.D. Cal. Apr. 5, 2019) (acknowledging that to "obtain relief by way of surcharge, a beneficiary must show a breach of fiduciary duties") (citation omitted).

The Court should do the same here.  The Complaint does not allege that Musk or X Corp. acted in a fiduciary capacity when terminating Plaintiff's employment.  For good reason.  Under ERISA, one is a fiduciary only "*to the extent*" one is engaged in fiduciary conduct—that is, exercising discretionary "control" or "authority" over plan "assets" or "administration."  29 U.S.C. § 1001(21)(A) (emphasis added).  Under this "functional" definition, courts recognize that even where (unlike here) the defendant is a fiduciary for *some* purposes, the defendant wears a "fiduciary hat" only when making discretionary decisions concerning ERISA plan management, and otherwise wears a non-fiduciary "corporate hat" when making personnel and other business decisions—even when those decisions adversely impact plan participants or plan benefits.  *Acosta v. Brain*, 910 F.3d 502, 518-20 (9th Cir. 2018).

Thus, when an officer or employer decides to terminate an employee, they are not engaged in fiduciary conduct as defined in ERISA.  *See id.* at 514, 518-20 (placing employee on "administrative leave," allegedly in violation of section 510, was an employment decision not fiduciary conduct); *Dzinglski v. Weirton Steel Corp.*, 875 F.2d 1075, 1080 (4th Cir. 1989) ("[Defendant] was acting in its capacity as [the plaintiff's] employer, not as a fiduciary, when it decided to discharge him," and thereby precluded recovery or early-retirement benefits under the

plan's terms). That is why Plaintiff has not alleged—*and cannot allege*—that the decision to terminate him constituted a breach of fiduciary duty here. It therefore follows that his request for an equitable surcharge is not appropriate equitable relief under ERISA. *See Gabriel*, 773 F.3d at 957 (equitable surcharges is available only for breaches of fiduciary duty); *Foster*, 2020 WL 3639648, at *9 (dismissing claims for equitable surcharge because defendants were not fiduciaries).

### 2. Plaintiff's Claims for Restitution and Disgorgement Are Not Appropriate Equitable Relief

Despite Plaintiff's label, "not all relief falling under the rubric of restitution is available in equity." *Gabriel*, 773 F.3d at 954 (citation omitted). Restitution in equity is available only "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* at 954-55; *see also Depot*, 915 F.3d at 663. By contrast, restitution at law is where the plaintiff "cannot assert title or right to possession of particular property" and instead seeks to recover "money to pay for some benefit the defendant received from the plaintiff." *Depot*, 915 F.3d at 661 (citation omitted). In other words, where a plaintiff seeks recovery out of the defendant's general assets, as here, this amounts to legal restitution, not *equitable* restitution. *Id.*; *see also Montanile v. Bd. of Trustees of Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 145 (2016) (recovery from a defendant's general assets "is a legal remedy, not an equitable one."); *Del Castillo v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*, 2019 WL 6841222, at *8 (N.D. Cal. Dec. 16, 2019) ("Equitable restitution may only be recovered from specifically identifiable funds within a defendant's possession and control—not from defendant's assets generally.") (citation omitted).

The *Depot* case is instructive. There, the Ninth Circuit affirmed dismissal of a claim relating to health insurance premium surcharges because the plaintiffs' request for restitution was legal in nature. 915 F.3d at 662. While the plaintiffs sought to recover an unidentified portion of the premiums that they alleged constituted unreasonable compensation, the premium surcharges "never existed as a distinct object or fund" but rather reflected a "specific amount of money encompassed within a particular fund." *Id.* (citation omitted). Consequently, the plaintiffs did not allege a specific, identifiable fund to which they were entitled, as required for equitable restitution. *Id.* The

court further acknowledged that "a judgment in plaintiffs' favor would have no connection to any particular fund whatsoever" and concluded the plaintiffs sought legal restitution. *Id*.

The same is true here. The Complaint alleges that Musk and X Corp. terminated Plaintiff's employment "with the specific intent of preventing him from obtaining benefits to which he was entitled under the Plan" and that he seeks to recover "relief in the form of restitution of the benefits owed to Plaintiff under the Plan." Compl. ¶ 78. But the Complaint does not allege that Plan benefits are "specifically identifiable funds" in Musk's or X Corp.'s possession to which Plaintiff is entitled. *See Depot*, 915 F.3d at 661-62; *Del Castillo*, 2019 WL 6841222, at *8 (dismissing claim for restitution where the plaintiffs "failed to specifically identify any funds within [defendant]'s control" but rather "generically point[ed]" to compensation that is somehow "traceable" to the defendant's general account); *see also Montanile*, 577 U.S. at 145 ("Equitable remedies are, as a general rule, directed against some specific thing; they give or enforce a right to or over some particular thing ... rather than a right to recover a sum of money generally out of the defendant's assets.") (internal quotations and citation omitted). Nor could it. The Plan makes clear that it is unfunded and that severance benefits are paid from company assets. Dkt. 1, Ex. 1 at ECF Page 28 of 74 (Plan is designed to provide benefits to "a select group of key Twitter" employees who were "designated as eligible by the Compensation Committee"); *id.* at ECF Page 34 of 74 ("The cost of the [Plan] is paid by the Company"). Indeed, were Plaintiff to prevail on his ERISA section 510 claim and Defendants were required to pay him Plan benefits, those benefits would be paid by the company from its general assets. At most, that is legal restitution, not an equitable remedy. *Depot*, 915 F.3d at 662.

Plaintiff's request for disgorgement fails for the same reason. Disgorgement is simply a form of restitution "measured by the defendant's wrongful gain rather than by the plaintiff's loss." *Id.* at 663 (internal quotations and citation omitted). But like restitution, equitable disgorgement is only "available when the plaintiff is entitled to a constructive trust on *particular property* held by the defendant that allows the plaintiff to recover profits produced by the defendant's use of *that property*." *Id.* (quoting *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 n.2 (2002)) (internal quotations omitted; emphases added). But again, the Complaint does not allege any

"particular property" held by Musk or X Corp. *Id.* at 664.  "Given the absence of any particular property in this case, [Plaintiff]'s request for disgorgement is not equitable in nature." *Id.* at 664.

### 3. The Complaint's Allegations Demonstrate That Plaintiff Cannot Recover Front Pay

Plaintiff's request for front pay likewise falls short.  Even assuming front pay may constitute "appropriate equitable relief" under section 502(a)(3) in certain cases, Plaintiff's own allegations confirm this is not one of them.  Front pay is a forward-looking remedy, measured by the amount the plaintiff was "reasonably certain" to earn through continued employment with the employer beyond the trial date, "but for his wrongful discharge" (minus earnings he could have obtained through alternative employment).  *Teutscher v. Woodson*, 835 F.3d 936, 948 (9th Cir. 2016).  But here, Plaintiff alleges he had *no expectation* of remaining employed at Twitter—let alone for years into the future and beyond any trial in this case.  Instead, Plaintiff alleges he submitted his resignation on October 28, 2022, and that he did resign by November 27, 2022.  Compl. ¶¶ 33, 48, 77, 88.  Thus, Plaintiff's own allegations refute any suggestion that he could be entitled to front pay as appropriate equitable relief for his section 510 claim.

In sum, Plaintiff's Second Cause of Action should be dismissed because it seeks relief that is not equitable or properly available to him under section 502(a)(3) of ERISA.

### C. The Second Cause Of Action Fails Because It Is Unavoidably Foreclosed By The First Cause Of Action

Plaintiff's ERISA section 510 claim fails because it is foreclosed by his claim for Plan benefits in the First Cause of Action.  The central question in this case is whether the Plan Administrator and Committee properly denied Plaintiff's claim for benefits based on their determinations that Plaintiff was terminated "for Cause" within the meaning of the Plan, such that Plaintiff had no right to benefits under the Plan.  That is the focus of the First Cause of Action in the Complaint, which is properly asserted under ERISA section 502(a)(1)(B).  Compl. ¶¶ 70-73.  In that claim, Plaintiff disagrees with the Plan Administrator and Committee by alleging he was not terminated "for Cause" as defined in the Plan, and thus argues he is entitled to severance benefits under the Plan.  Compl. ¶¶ 43, 53, 71.  Based on this claim, Plaintiff seeks an order requiring that

he be paid benefits "in accordance with the terms of the Plan." Compl., Prayer for Relief ¶ 2. If Plaintiff prevails, then he may recover severance benefits, but only after executing a "separation agreement and release of claims," in "accordance with the terms of the Plan." *See supra* Section II(A). In other words, if Plaintiff prevails on his claim for severance benefits in his First Cause of Action, then his section 510 claim in the Second Cause of Action will necessarily be extinguished by the required release of claims.[2]

Alternatively, if the Court agrees with the Plan Administrator and Committee that Plaintiff was terminated "for Cause" within the meaning of the Plan—and thus had no right to benefits under the Plan—then Plaintiff's section 510 claim will fail, too. That is because when a plan bars employees terminated for cause from receiving severance benefits, and the administrator properly determines the employee's termination was for cause, then the employee had no "right" under the plan with which to "interfer[e]." 29 U.S.C. § 1140; *see, e.g.*, *Pendelton v. QuickTrip Corp.*, 567 F.3d 988, 993 (8th Cir. 2009) (affirming dismissal of section 510 claim because the "severance plan clearly states that employees terminated for cause will not receive severance," and the plaintiff "was terminated for cause, and he was therefore fully excluded from severance benefits"); *Lillywhite v. AECOM*, 2020 WL 13628211, at *1 (W.D. Wash. Dec. 23, 2020) ("Plaintiff's failure to refute Defendants' allegation that he was terminated for cause forecloses a claim based on an alleged violation of § 510.").

In sum, whether or not Plaintiff succeeds on his First Cause of Action, his ERISA Section 510 claim is subject to dismissal either way. Courts have rejected section 510 claims for these reasons. *See Chambers*, 668 F.3d at 567 ("[I]f [plaintiff] was terminated for cause, she had no further rights under the plan. If she was not validly terminated for cause, she had a claim for severance benefits under the plan. In either event, no § 510 'interference' claim will lie."); *cf. Teurner v. Gen. Motors Corp.*, 34 F.3d 542, 545 (7th Cir. 1994) (holding that the defendant's alleged intentional mischaracterization of the cause of the plaintiff's termination could not support

---

[2] The same is true for the Fourth and Fifth Causes of Action, Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing, which would likewise be extinguished by the release.

a section 510 claim because the challenged characterization did not "itself" change plaintiff's employment status—i.e., terminated—and any claim that the termination was misclassified was properly asserted as a claim for benefits under the plan pursuant to ERISA section 502(a)(1)(B)).

This makes sense. Allowing Plaintiff to assert a section 510 claim here would create the absurd result that every decision designating a termination "for cause" under a severance plan is challenged not only as a claim for plan benefits under ERISA section 502(a)(1)(B), but also as a section 510 violation. The Court should dismiss the Second Cause of Action for this additional reason.

## IV.  CONCLUSION

The Court should dismiss Plaintiff's claim brought pursuant to 29 U.S.C. §§ 1132(a)(3) and 1140, the Complaint's Second Cause of Action, pursuant to Rule 12(b)(6).

Dated: June 17, 2024                    Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By  /s/ Christopher Boran
    Eric Meckley
    Jeremy Blumenfeld (admitted *pro hac vice*)
    Christopher Boran (admitted *pro hac vice*)
    Abbey Glenn
    Brian Sullivan (admitted *pro hac vice*)

*Attorneys for Defendants*