DAVID A. LOWE (SBN: 178811)
Email: dal@rezlaw.com
ZOË R. DEGEER (SBN: 298698)
Email: zrd@rezlaw.com
RUDY, EXELROD, ZIEFF & LOWE, LLP
351 California Street, Suite 700
San Francisco, CA 94104
Telephone: (415) 434-9800
Facsimile: (415) 434-0513

Attorneys for Plaintiff
Nicholas Caldwell

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NICHOLAS CALDWELL,<br><br>          Plaintiff,<br><br>     vs.<br><br>ELON MUSK; X CORP., f/k/a TWITTER, INC.; TWITTER, INC. CHANGE OF CONTROL AND INVOLUNTARY TERMINATION PROTECTION POLICY; LINDSAY CHAPMAN; BRIAN BJELDE; DHRUV BATURA; and DOES 1-20, inclusive,<br><br>          Defendants.<br><br>_____/ | Case No. 3:24-cv-02022-MMC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT'S SECOND CAUSE OF ACTION**<br><br>Hearing Date: August 30, 2024<br>Time: 9:00 AM<br>Location: Courtroom 7, 19th Floor<br>Hon. Maxine M. Chesney<br><br>Complaint Filed: April 3, 2024 |

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

## **TABLE OF CONTENTS**

Page(s)

I.      INTRODUCTION ................................................................................................... 1

II.     FACTUAL SUMMARY ......................................................................................... 1

III.    LEGAL STANDARD ............................................................................................. 3

IV.     ARGUMENT .......................................................................................................... 3

        A.    The Complaint Adequately Alleges Well-Established ERISA Equitable
              Remedies for the Section 510 Claim. ........................................................... 4

              1.    Plaintiff Has Properly Pled Entitlement to Surcharge and
                    Disgorgement. ................................................................................... 6

              2.    Plaintiff Has Properly Pled Entitlement to Restitution and
                    Disgorgement. ................................................................................... 9

              3.    Plaintiff Has Properly Pled Entitlement to Front Pay. ..................... 10

        B.    Plaintiff's First Cause of Action Does Not Foreclose the Second. ............... 11

              1.    Defendants' Premise That Winning the Benefit Claim Would
                    Release the 510 Claim Depends on Conjecture. ............................... 12

              2.    Contrary to Defendants' Contention, even if Plaintiff Loses His
                    Benefits Claim, He Would not Automatically Lose the 510 Claim. ......... 12

              3.    Courts Commonly Allow Claims for Benefits to Proceed
                    Concurrently with Section 510 Claims. ........................................... 14

V.      CONCLUSION ...................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alexander v. Fujitsu Bus. Commc'ns Sys., Inc.*,
  818 F. Supp. 462 (D.N.H. 1993) ................................................................. 7

*Batchelor v. Oak Hill Med. Grp.*,
  870 F.2d 1446 (9th Cir. 1989) ..................................................................... 8

*Black v. Long Term Disability Insurance*,
  373 F. Supp. 2d 897 (E.D. Wis. 2005) ...................................................... 13

*Bowen v. Nationwide Mut. Ins. Co.*,
  2019 WL 4412805 (M.D. Pa. Sept. 16, 2019) ........................................... 14

*Broam v. Bogan*,
  320 F.3d 1023 (9th Cir. 2003) ..................................................................... 3

*Chambers v. Travelers Cos.*,
  668 F.3d 559 (8th Cir. 2012) ................................................................. 13, 14

*Chambers v. Travelers Cos.*,
  764 F. Supp. 2d 1071 (D. Minn. 2011) ...................................................... 14

*CIGNA Corp. v. Amara*,
  563 U.S. 421 (2011) ..................................................................................... 5

*Cockerill v. Corteva, Inc.*,
  2022 WL 3099771 (E.D. Pa. Aug. 4, 2022) .............................................. 14

*Coyne & Delany Co. v. Selman*,
  98 F.3d 1457 (4th Cir. 1996) ....................................................................... 8

*Davison v. Hartford Life and Accident Ins. Co.*,
  2005 WL 807045 (N.D. Cal. Apr. 7, 2005) ................................................. 8

*Depot, Inc. v. Caring for Montanans, Inc.*,
  915 F.3d 643 (9th Cir. 2019) ............................................................... *passim*

*Doe v. United States*,
  419 F.3d 1058 (9th Cir. 2005) ..................................................................... 3

*Folz v. Marriott Corp.*,
  594 F. Supp. 1007 (W.D. Mo. 1984) ......................................................... 10

*Gavalik v. Cont'l Can Co.*,
  812 F.2d 834 (3d Cir. 1987) ........................................................................ 4

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

*Greenburg v. Life Ins. Co. of North America,*
2009 WL 1110331 (N.D. Cal. Apr.23, 2009) ........................................................................ 11

*Johns v. Ng,*
2012 WL 4497770 (N.D. Cal. Sept. 28, 2012) ...................................................................... 14

*Khoja v. Orexigen Therapeutics, Inc.,*
899 F.3d 988 (9th Cir. 2018) ................................................................................................... 3

*King v. Wal-Mart Stores, Inc.,*
2008 WL 11450868 (D. Nev. Aug. 11, 2008) ......................................................................... 9

*La Fata v. Raytheon Co.,*
223 F. Supp. 2d 668 (E.D. Pa. 2002) .................................................................................... 14

*Lessard v. Applied Risk Mgmt.,*
307 F.3d 1020 (9th Cir. 2002) ..................................................................................... 4, 12, 15

*Lillywhite v. AECOM,*
2020 WL 13628211 (W.D. Wash. Dec. 23, 2020) ................................................................ 13

*Lormand v. US Unwired, Inc.,*
565 F.3d 228 (5th Cir 2009) .................................................................................................... 3

*Love v. Talbert House,*
2020 WL 6440256 (S.D. Ohio Nov. 3, 2020) ....................................................................... 14

*Marshall v. Northrop Grumman Corp.,*
2018 WL 1406703 (C.D. Cal. Feb. 15, 2018) ......................................................................... 8

*Moyle v. Liberty Mutual Retirement Benefit Plan,*
823 F.3d 948 (9th Cir. 2016) ................................................................................................. 14

*Pegram v. Herdrich,*
530 U.S. 211 (2000) ................................................................................................................. 6

*Pendleton v. QuickTrip Corp.,*
567 F.3d 988 (8th Cir. 2009) ................................................................................................. 13

*Santomenno v. Transamerica Life Insurance Co.,*
883 F.3d 833 (9th Cir. 2018) ................................................................................................... 6

*Schwartz v. Gregori,*
45 F.3d 1017 (6th Cir. 1995) ................................................................................................. 11

*Silva v. Metro. Life Ins. Co.,*
762 F.3d 711 (8th Cir. 2014) ................................................................................................. 14

*Teumer v. Gen. Motors Corp.,*
34 F.3d 542 (7th Cir. 1994) ............................................................................................ 13, 15

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

*Teutscher v. Woodson*,
  835 F.3d 936 (9th Cir. 2016) ............................................................... 5, 10, 11

*Tolle v. Carroll Touch, Inc.*,
  977 F.2d 1129 (7th Cir. 1992) ...................................................................... 14

*Zavala v. Kruse-W., Inc.*,
  No. 119CV00239DADSKO, 2021 WL 5883125 (E.D. Cal. Dec. 13, 2021) ..................... 9, 10

*Zavala v. Kruse-Western, Inc.*,
  398 F. Supp. 3d 731 (E.D. Cal. 2019) ............................................................... 5

*Zisk v. Gannett Company Income Protection Plan*,
  73 F. Supp. 3d 1115 (N.D. Cal. 2014) ............................................................ 8, 14

**Federal Statutes**

29 U.S.C.
  § 1002(21)(A) ............................................................................................ 6
  § 1132(a)(3) ..................................................................................... 4, 11, 13

ERISA
  § 3(1) ..................................................................................................... 2
  § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) ................................................. 1, 11, 14
  § 502(a)(3) .......................................................................................... *passim*
  § 510, 29 U.S.C. § 1140 ........................................................................... *passim*

COBRA ...................................................................................................... 2

**Other Authorities**

Federal Rule of Civil Procedure
  Rule 8(a)(3) .............................................................................................. 12
  Rule 8(d)(2) ............................................................................................. 12
  Rule 8(d)(3) ............................................................................................. 12
  Rule 12(b)(6) ............................................................................................. 3
  Rule 15 ................................................................................................... 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

I. <u>**INTRODUCTION**</u>

This is a classic case of interference with rights under an employee benefit plan: Defendant Elon Musk discharged Plaintiff Nicholas Caldwell from his job for the specific purpose of preventing him from obtaining severance benefits under Twitter's[1] ERISA-governed plan. Indeed, Defendants do not dispute that Mr. Caldwell has alleged all of the elements of a claim under ERISA § 510, 29 U.S.C. § 1140.

Instead, Defendants argue that Plaintiff's Section 510 claim is inconsistent with his claim for benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and that Plaintiff has not alleged an available remedy. Both arguments fail for the reasons stated below.

*First*, Plaintiff seeks appropriate equitable remedies. He has properly alleged his entitlement to ERISA's well-established surcharge, equitable restitution, disgorgement and front pay remedies. He is entitled to the surcharge remedy because Musk's conduct was undertaken in his capacity as a fiduciary of the Plan; and he has properly requested disgorgement or equitable restitution, as Defendants benefited by withholding his severance, including vesting of a large number of shares of Twitter stock, which are still in Defendants' possession.

*Second*, Plaintiff can elect alternative theories of liability at the pleading stage. Moreover, the benefits claim and the Section 510 claim seek different remedies. Courts routinely allow plaintiffs to plead both.

Defendants' Motion to Dismiss (ECF No. 35, "Mot." or "Motion") should be denied.

II. <u>**FACTUAL SUMMARY**</u>

Starting in January 2022, Defendant Musk began accumulating significant amounts of Twitter common stock, and by April, he owned over a nine percent ownership stake. Compl. ¶ 27. In April 2022, Musk agreed to buy Twitter, but soon after attempted to back out of the deal. *Id.* at ¶¶ 28-29. Twitter sued Musk to enforce the deal, and after intense litigation and on the eve of trial, Musk caved and agreed to complete the acquisition. *Id.* at ¶ 30.

Between mid-May and late October 2022, there was enormous uncertainty as to whether

---

[1] Defendant X Corp. succeeded to all of Twitter's obligations on October 27, 2022, and is the sponsor and administrator of the severance plan at issue in this case. Compl. ¶ 7. Plaintiff uses the terms "Twitter," "X Corp.," and "the Company" interchangeably herein.

the deal would close, and many employees left the company during this tumultuous period. *Ibid*.

Mr. Caldwell and other executives stayed and worked diligently to retain key employees in order

to operate the business responsibly. *Ibid*. Their conduct was in the best interest of Twitter, and

was consistent with the Merger Agreement and their obligations to the Twitter, Inc. Board and

shareholders. *Ibid*.

Mr. Caldwell is entitled to benefits under the Twitter, Inc. Change of Control and

Involuntary Termination Protection Policy, as amended and restated effective August 8, 2014

("the Plan").[2] The Plan expressly provides that if after a change of control Mr. Caldwell no

longer reports to the CEO of a publicly traded company, this constitutes a material adverse

change in the scope of Mr. Caldwell's authority, powers, functions, duties, responsibilities, or

reporting relationship, which is grounds for resignation for "Good Reason," a "Qualified

Termination" under the terms of the Plan. *Id*. at ¶ 32.

Under the Plan and his Participation Agreement, Mr. Caldwell is entitled to accelerated

vesting of 50% of his then-unvested equity, one year of base salary, and one year of COBRA

benefits if he experiences a COC (Change of Control) Qualified Termination, whether a

resignation for Good Reason or a termination by the Company other than for Cause. *Id*. at ¶ 26.

Musk fired CEO Parag Agrawal—to whom Caldwell reported—on October 27, 2022, and

Twitter stopped being publicly traded on October 28. *Id*. at ¶ 32. That day, Mr. Caldwell

informed the company he was resigning for Good Reason pursuant to the Plan and stated that he

was willing to stay employed by the company as long as the company needed for him to

transition his role. *Id*. at ¶ 33. On November 2, 2022, Twitter notified Mr. Caldwell by email

that he would be employed "until" November 27, 2022, a date that Twitter unilaterally chose.

Twitter did not request that Mr. Caldwell remain employed for a 30-day cure period, nor did it

dispute Mr. Caldwell's assertion of grounds for Good Reason. *Id*. at ¶ 34.

On November 27, 2022, after Mr. Caldwell's resignation for Good Reason became

effective, Musk sent Mr. Caldwell a letter purportedly terminating him for Cause. *Id*. at ¶ 36.

Musk did not state or otherwise identify or refer to any facts, events, or circumstances to support

---

[2] The Plan is an employee welfare benefit plan under ERISA Section 3(1). Compl. Ex. 1.

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

1   that there was Cause within the meaning of the Plan.  *Ibid*.  This termination formed the basis for

2   Twitter's denial of Mr. Caldwell's claim for benefits under the Plan.

3        Over the course of his employment with Twitter, Mr. Caldwell received tens of thousands

4   of Restricted Stock Units ("RSUs") and Performance-Based Restricted Stock Units ("PSUs").  *Id*.

5   at ¶ 55.  By terminating Mr. Caldwell for Cause, Twitter stripped him of the right to accelerated

6   vesting of this equity and retained the shares and the substantial cash severance he was owed.  *Id*.

7   at ¶ 40.

8   **III.   LEGAL STANDARD**

9        Generally, courts disfavor motions to dismiss under Rule 12(b)(6).  *See Broam v. Bogan*,

10  320 F.3d 1023, 1028 (9th Cir. 2003) (dismissal with prejudice only proper in "extraordinary"

11  cases); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir 2009) (12(b)(6) motions

12  "viewed with disfavor and rarely granted").

13       "On a motion to dismiss for failure to state a claim, the court must construe the complaint

14  in the light most favorable to the plaintiff, taking all h[is] allegations as true and drawing all

15  reasonable inferences from the complaint in h[is] favor."  *Doe v. United States*, 419 F.3d 1058,

16  1062 (9th Cir. 2005).

17       "[A] complaint should not be dismissed for failure to state a claim unless it appears

18  beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

19  entitle him to relief."  *Ibid*. (internal citations omitted).  A Defendant cannot "present their own

20  version of the facts at the pleading stage."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988,

21  999, 1014 (9th Cir. 2018) (If defendants are permitted to present their own version of the facts at

22  the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes

23  near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible'

24  claim for relief at pleading stage.").

25  **IV.   ARGUMENT**

26       Musk's and X's conduct violate ERISA Section 510 because Musk fired Mr. Caldwell

27  with the unsupported assertion that it was "for cause" in order to strip Mr. Caldwell of his right to

28  equity and other compensation owed to him under the Plan.

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

Section 510 states:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

29 U.S.C. § 1140.  "The purpose of section 510 is to prevent persons and entities from taking actions which might cut off or interfere with a participant's ability to collect present or future benefits or which punish a participant for exercising his or her rights under an employee benefit plan."  *Lessard v. Applied Risk Mgmt.*, 307 F.3d 1020, 1024 (9th Cir. 2002) (internal quotations and citations omitted).

"Under the prevailing case law, and in accordance with the statutory language, the essential element of proof under § 510 is specific intent to engage in proscribed activity."  *Gavalik v. Cont'l Can Co.*, 812 F.2d 834, 851 (3d Cir. 1987).  Proof of specific intent to interfere with the ability to receive benefits under an ERISA-covered plan "ordinarily constitute[s] a violation of § 510 of ERISA,"—"regardless of whether the interference is successful and regardless of whether the participant would actually have received the benefits absent the interference…."  *Id.* at 851–852.  "To recover under § 510, a plaintiff need not prove that the *sole* reason for his [or her] termination was to interfere with [benefit] rights."  *Id.* at 851 (internal quotations and citations omitted).

Notably, Defendants do not assert that the Complaint fails to plead the elements of a Section 510 violation; indeed, there is no basis to do so.  Instead, they argue that the claim is not cognizable because there is no appropriate equitable remedy and/or because Plaintiff's claim for benefits under the Plan forecloses the Section 510 claim.  But as explained below, these arguments fail and the Section 510 claim should be allowed to proceed.

**A.    The Complaint Adequately Alleges Well-Established ERISA Equitable Remedies for the Section 510 Claim.**

Section 510 is enforceable under ERISA Section 502(a)(3), which authorizes injunctive relief and "other appropriate equitable relief" to redress the violation.  29 U.S.C. § 1140; 29 U.S.C. § 1132(a)(3); *Lessard*, 307 F.3d at 1024.  As a result, the Court sits in equity when

RUDY EXELROD ZIEFF & LOWE LLP

351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

1    redressing violations of ERISA.  Courts have interpreted "appropriate equitable relief" under

2    Section 502(a)(3) to describe "those categories of relief that were typically available in equity

3    during the days of the divided bench."  *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643,

4    660 (9th Cir. 2019) (internal quotations and emphasis omitted) (citing *Montanile v. Bd. of Trs. of*

5    *the Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 142 (2016)).

6         In many instances those categories required "the money or property sought [to be] 'in the

7    defendants' possession.'"  *Zavala v. Kruse-Western, Inc.*, 398 F. Supp. 3d 731, 741 (E.D. Cal.

8    2019) (citing *Depot*, 915 F.3d at 661).  Given the broad powers of a Court sitting in equity, there

9    are notable exceptions.  For example, if a plaintiff seeks relief for an ERISA violation by a

10    fiduciary, as Mr. Musk was here, then the plaintiff can obtain an equitable remedy called

11    surcharge, which does not require tracing of the disputed assets.  *See, e.g., CIGNA Corp. v.*

12    *Amara*, 563 U.S. 421 (2011), 441-442 (finding "make-whole relief" "for a loss resulting from a

13    trustee's breach of duty, or to prevent the trustee's unjust enrichment" available under 502(a)(3)

14    without regard to specifically identified property).

15         In addition, front pay, a form of relief sought by Plaintiff which by its very nature has not

16    yet been taken from an aggrieved participant at the time of the act and therefore is not traceable,

17    is available "in equity under section 510."  *Teutscher v. Woodson*, 835 F.3d 936, 947 (9th Cir.

18    2016).

19         To state a claim enforceable under Section 502(a)(3), a complaint "must contain

20    allegations that the relief sought is equitable rather than legal."  *Zavala*, 398 F. Supp. 3d at 740

21    (citing *Depot*, 915 F.3d at 659).  But since the relevant facts are "likely to be unavailable to

22    plaintiffs in the absence of discovery," the complaint need not plead such allegations with

23    specificity.  *Id.* at 742 n.3.  "So long as [a] plaintiff has a good faith basis for his allegations, [the]

24    facts need be alleged only generally."  *Ibid.*  In light of this broad standard, even when courts find

25    that plaintiffs did not initially plead sufficient allegations, they regularly grant leave to amend.

26    *See, e.g., Del Castillo*, 2019 WL 6841222, at *8 (dismissing claim due to insufficient pleading

27    but granting leave to amend); *Zavala*, 398 F. Supp. 3d at 742 (same).

28         Here, Plaintiff seeks four remedies: surcharge, restitution, disgorgement, and front pay.

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

Compl. at Prayer for Relief, ¶ 4.  As explained below, Plaintiff has alleged that Defendants Musk and X Corp. acted in a fiduciary capacity, which means that surcharge and disgorgement are available equitable remedies.  He has also alleged property in Defendants' possession that makes equitable restitution and disgorgement available.  Finally, he has met the requirements of front pay, another equitable remedy under Section 502(a)(3).

### 1.  Plaintiff Has Properly Pled Entitlement to Surcharge and Disgorgement.

Surcharge and disgorgement are both available for claims against fiduciaries under ERISA § 502(a)(3), the civil enforcement provision used for Section 510 claims.  *Amara*, 563 U.S. at 439-42 (surcharge); *Depot*, 915 F.3d at 663-664 & n. 15 (noting that disgorgement is "essentially the same remedy" as an accounting for profits, and that "[u]nder traditional rules of equity, an accounting for profits may be available in the absence of a constructive trust over specifically identifiable property if the defendant owed a fiduciary duty to the plaintiff and breached that duty") (internal quotation marks omitted).

Under ERISA, regardless of whether they are named as such, a person is a fiduciary to the extent they were "performing a fiduciary function … when taking the action subject to complaint."  *Pegram v. Herdrich*, 530 U.S. 211, 225-226 (2000) (citing 29 U.S.C. § 1002(21)(A)); *see also Santomenno v. Transamerica Life Insurance Co.*, 883 F.3d 833 (9th Cir. 2018) ("ERISA's definition of 'fiduciary' is functional") (internal citation and quotations omitted).  Any person who exercises any discretionary authority or control with respect to management or administration of a benefit plan acts as a fiduciary.  29 U.S.C. § 1002(21)(A).

Here, Plaintiff has alleged that Musk and X Corp. were functional fiduciaries.  They were Administrators of the Plan and, as such, had fiduciary duties.  Compl. ¶¶ 6-7.; s*ee also Amara*, 563 U.S. at 437 (plan administrator is "a trustee-like fiduciary").  Further, Musk and X Corp. cited Plan provisions in the termination letter, falsely asserting that Plaintiff had engaged in misconduct in order to fit within the "Cause" definition in the Plan.  Compl. ¶¶ 36-37.  This use of the Plan in a termination letter to cut off benefits constitutes discretionary authority over the Plan, and Musk and X Corp. acted in a fiduciary capacity in terminating Plaintiff's employment.

Defendants contend that an employer's decision to terminate an employee is not fiduciary conduct, but that is not always true. Mot. at 7-8. Where an employment decision is made to deprive an employee of benefits under a plan, that is a fiduciary act because it is an exercise of discretion regarding plan management and administration. *See Alexander v. Fujitsu Bus. Commc'ns Sys., Inc.*, 818 F. Supp. 462, 476 (D.N.H. 1993).

The facts in *Alexander* are strikingly similar to those here. There, the employer was in the process of deciding whether to give an employee the option to resign or be terminated when the employee was injured in a fall. *Id.* at 465. Four days after the injury, the employer gave the employee a letter that had been written after the injury, but backdated by five days, stating that he was being terminated because he had not submitted a resignation. *Ibid.* The complaint alleged that HR had determined his eligibility for disability benefits were he to be discharged and the employer backdated the termination letter with the specific intent to deprive the plaintiff of benefits under the disability plan. *Id.* at 476. The court held these to be "adequate[] alleg[ations]" that the employer "exercised discretionary authority or discretionary responsibility in the administration of the plan" and was thus acting as a fiduciary under ERISA. *Ibid.*

Similarly, here Defendants' "[f]alse and [s]hifting [r]easons" for his "for cause" termination—and the fact that the termination was effected after Plaintiff gave notice of his intent to seek benefits under the Plan—are evidence that the "entire termination and administrative claims process was a sham" that Defendants orchestrated "specifically to deny [him] the severance plan benefits." *See ibid.*; Compl. ¶¶ 3, 37-53. These allegations demonstrate that Defendants exercised "discretionary authority . . . in the administration of the plan" when purporting to terminate Plaintiff for "Cause." The Court should find that Plaintiff's firing was a fiduciary act under ERISA.[3]

---

[3] The cases Defendants cite are distinguishable. They cite *Acosta v. Brain* for the proposition that employment decisions are not "fiduciary conduct as defined in ERISA," but that case involved an employer putting an *employee of the plan* on administrative leave for their cooperation with a Department of Labor inquiry—not, as here, an employer firing a *plan beneficiary* to prevent them from receiving its benefits. 910 F.3d 502, 507-508, 518-520 (9th Cir. 2018); Mot. at 7; *see also Acosta*, 910 F.3d at 519-520 (stressing that 510's plain text "underscores the fact that ERISA fiduciary duties run to the interests of participants and beneficiaries of an ERISA plan" and "*says nothing about employees*" like the plaintiff "*who serve*

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

If anything, the facts here are more stark: Mr. Caldwell resigned for Good Reason, thereby triggering his rights to compensation under the Plan, only for Musk to later terminate him for Cause without any factual basis.  Musk's choice to act as a fiduciary by exercising discretionary control over the Plan is plain.  This conduct is actionable because making benefit decisions under false pretenses is a breach of fiduciary duty for which equitable relief, including surcharge, is available.  *See Zisk v. Gannett Company Income Protection Plan*, 73 F. Supp. 3d 1115, 1119-1121 (N.D. Cal. 2014) (holding that plaintiff could bring a claim for breach of fiduciary duty seeking equitable relief under Section 502(a)(3), including equitable surcharge, based on allegations that administrator "offered untrue reasons for terminating his benefits," "failed to investigate adequately," and "made false representations in connection with its refusal to reinstate his benefits").

Moreover, Plaintiff's allegations give rise to a reasonable inference that Musk exercised discretion over the Plan by hand-picking individuals loyal to him to carry out the denial of Plaintiff's claim and uphold his baseless assertion that Plaintiff was fired for "Cause."  An employer's "selection and retention of plan administrators" is a fiduciary function.  *Batchelor v. Oak Hill Med. Grp.*, 870 F.2d 1446, 1448-1450 (9th Cir. 1989); *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465-1466 (4th Cir. 1996); *Davison v. Hartford Life and Accident Ins. Co.*, 2005 WL 807045, at *1-*2 (N.D. Cal. Apr. 7, 2005) (citing *Coyne*, 98 F.3d at 1465-1466); *see also Marshall v. Northrop Grumman Corp.*, 2018 WL 1406703, at *3-*4 (C.D. Cal. Feb. 15, 2018).  Defendant Lindsay Chapman, who denied Plaintiff's original claim, purports to be a member of the Twitter Severance Administration Committee ("Committee"), but she is also allegedly a Senior Director of Human Resources at one of Musk's other companies (SpaceX).  Compl. ¶ 13.  The other two members of the Committee are a Vice President of Human Resources at SpaceX and a Senior Director of Finance at X Corp. who worked for Musk for ten years at Tesla, Inc.

_____

*the plan and its administration*").

Defendants cite *Dzinglski v. Weirton Steel Corp.* for the same proposition, but there the court found an employment decision nonfiduciary based on a provision in the plan that "personnel decisions are the exclusive province of [the employer] as employer, not as plan . . . fiduciary."  875 F.2d 1075, 1076-1077, 1080 (4th Cir. 1989); Mot. at 7-8.  No such provision exists in the Plan here.

8

*Ibid*., *see also id*. at ¶ 9 (alleging that Musk relies on personal friends and longtime business associates to provide services to Twitter), ¶ 49 (alleging that the Committee was "made up of . . . employees from Musk's companies *acting on behalf of, and in the interests of Musk*.") (emphasis added).  These individuals furthered Musk's scheme to deny Plaintiff severance benefits by manufacturing fake "Cause" for his termination in the claim and appeal denial letters.  *Id*. at ¶¶ 40-53.  By selecting Committee members and overseeing their work, Musk and X Corp. acted as fiduciaries in Plaintiff's claim and appeal process.

Finally, whether a defendant acted in a fiduciary capacity is fact-intensive and not appropriate for determination on the pleadings.  *See, e.g.*, *King v. Wal-Mart Stores, Inc*., 2008 WL 11450868, at *8 (D. Nev. Aug. 11, 2008).  While Musk and X Corp. appear to have acted as fiduciaries, the Court should not prematurely decide whether they engaged in any fiduciary conduct that would trigger Plaintiff's eligibility for a surcharge remedy until discovery has been conducted.

**2.**   **Plaintiff Has Properly Pled Entitlement to Restitution and Disgorgement.**

Restitution and disgorgement are available under Section 502(a)(3) where they target property in Defendants' possession.  *Depot*, 915 F.3d at 661-665; *Zavala v. Kruse-W., Inc.*, No. 119CV00239DADSKO, 2021 WL 5883125, at *6-7 (E.D. Cal. Dec. 13, 2021).  Restitution targets "property identified as belonging . . . to the plaintiff" while disgorgement targets "the 'proceeds' from disposing of [such] property as well as 'profits derived' from the illicit use of that property."  *Depot*, 915 F.3d at 661, 664.

Defendants' argument that restitution and disgorgement are not available ignores Plaintiff's allegations regarding the Plan-mandated vesting of equity awards that Twitter/X Corp. refused to vest after Musk decided to terminate Mr. Caldwell for Cause even after he resigned for Good Reason and triggered his vesting rights.  Plaintiff alleges that Defendants refused to vest RSUs and PSUs awarded to him that were due to vest per the Plan's "acceleration of equity in the event of a COC Qualified Termination."  Compl. ¶¶ 54-64.  These shares are particular property belonging to Plaintiff that are held by X Corp.

RUDY EXELROD ZIEFF & LOWE LLP

351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

Therefore, the linchpin of Defendants' argument—that "were Plaintiff to prevail on his ERISA section 510 claim and Defendants were required to pay him Plan benefits, those benefits would be paid by the company from its general assets"—is inaccurate.  Mot. at 9; *see Folz v. Marriott Corp.*, 594 F. Supp. 1007, 1019 (W.D. Mo. 1984) ("One benefit lost" due to plaintiff's wrongful termination in violation of Section 510 was stock options; "[a]ccordingly, these lost stock option opportunities were a substantial part of plaintiff's compensation and will be restored to him.").  The Court can order restitution and disgorgement of the shares that rightfully belong to Mr. Caldwell and that Twitter now holds.  As a result, the restitution and disgorgement remedies survive the motion to dismiss.  *See Depot*, 915 F.3d at 661, 664 (internal quotations omitted).

In addition, the fact that cash payments under the Plan are made from X Corp.'s general assets does not mean restitution and disgorgement are unavailable.  A plaintiff "may allege 'the existence of a general account in which the ill-gotten funds...were commingled, such that the product of those funds would be traceable'" or "that defendants' account balance remained above the surcharge amounts for purposes of the 'lowest intermediate balance' theory." *Zavala*, 2021 WL 5883125, at *6 (quoting *Depot*, 915 F.3d at 661-663).  If the Court believes it is necessary for clarity, Plaintiff can amend the Complaint to more specifically allege that the funds he should have been paid under the Plan are commingled in X Corp.'s general account and/or that X Corp.'s general account balance remained far above the amount owed to him.

### 3.    **Plaintiff Has Properly Pled Entitlement to Front Pay.**

Front pay is a remedy in the form of "the salary an employee was reasonably certain to have earned but for his wrongful discharge." *Teutscher v. Woodson*, 835 F.3d 936, 948 (9th Cir. 2016).  Defendants argue that front pay cannot be awarded here because Plaintiff had no expectation of remaining employed at Twitter due to his allegations that he submitted his resignation on October 28, 2022, and did resign by November 27, 2022.  Mot. at 10 (citing Compl. ¶¶ 33, 48, 77, 88).

///

///

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

However, equitable front pay under Section 510 is intended to make the plaintiff whole when reinstatement is unavailable or imprudent.  *Teutscher*, 835 F.3d at 947-948.[4]  In his October 28, 2022, resignation letter Plaintiff stated that "he was willing to stay employed by the company as long as the company needed for him to transition his role.  Compl. ¶ 33.  In response, Defendants "did not request that [Plaintiff] remain employed for a 30-day cure period," and instead "unilaterally chose" an earlier date on which his employment would be terminated.  *Id.* at ¶¶ 34, 36.  Reinstatement is not feasible here, so front pay is appropriate equitable relief for the time it likely would have taken for Plaintiff to transition his role in the absence of Defendants' premature and unlawful termination of his employment.  *Ibid.*; *see also* section B *infra* (noting that Plaintiffs are entitled to plead remedies in the alternative).

In sum, Plaintiff has sufficiently pled entitlement to multiple equitable remedies which are available under ERISA § 502(a)(3).  Defendants' Motion should be denied as to the remedies issue.

**B.      Plaintiff's First Cause of Action Does Not Foreclose the Second.**

Defendants' argument that Count I, Plaintiff's claim for benefits under ERISA § 502(a)(1)(B), forecloses Count II under ERISA § 510 is wrong.  *First*, Defendants contend that if Mr. Caldwell succeeds on the benefits claim, his 510 claim must be dismissed because he would be required as part of a judgment to sign the Company's standard release extinguishing the 510 claim.  Mot. at 2, 10-11.

*Second*, they argue that losing the benefits claim would defeat the 510 claim because Plaintiff had no rights with which Defendants could have interfered.  *Id.* at 11.  Defendants assert that where a claim for benefits will inevitably dispose of a 510 claim, the 510 claim must be dismissed.  *Id.* at 2, 11-12.  These arguments are meritless and ignore Plaintiff's right to plead claims in the alternative.

///

---

[4] In addition, some courts have held that back pay is appropriate equitable relief.  *See Greenburg v. Life Ins. Co. of North America,* 2009 WL 1110331 at *3 (N.D. Cal. Apr.23, 2009) ("Reinstatement of employment, front pay and back pay may be an appropriate remedy under § 1132(a)(3) if an employer discharges or otherwise discriminates against an employee ... in retaliation for exercising rights under a benefit plan."); *Schwartz v. Gregori*, 45 F.3d 1017, 1022-1023 (6th Cir. 1995).

1. **Defendants' Premise That Winning the Benefit Claim Would Release the 510 Claim Depends on Conjecture.**

The terms of the Company's standard "release of all claims" are not referenced in the Complaint, so Defendants' contention that it would include the release of a Section 510 claim is unsupported. *See* Compl. Ex. 1 at ECF Page 29 of 74. Defendants cannot present the release at this stage because it is outside the pleadings. The argument that the Section 510 claim would be automatically extinguished by an unknown release is plainly improper at the pleadings stage.

Moreover, a standard release that would be contained in a separation agreement would not necessarily be required if Plaintiff were to prevail in a court action to recover benefits. *Ibid.* The Plan provides that the release must be signed and "become effective and irrevocable no later than sixtieth (60th) day following your Qualified Termination." *Ibid.* Plaintiff was never provided and thus did not sign the release. Compl. ¶¶ 33-34. Defendants do not contend that the Plan provides for a release to be signed following resolution of a contested benefits claim.

Finally, even if Plaintiff was required to sign the standard release, and it included a release of the Section 510 claim, the Court should not dismiss the Section 510 claim because Plaintiff is permitted to allege claims and remedies in the alternative. Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones"); Fed. R. Civ. P. 8(a)(3) (demand for relief "may include relief in the alternative or different types of relief"); *see also* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has . . . ."). If Plaintiff prevails on his claim for benefits and the Court determines that he must therefore release the 510 claim, he can elect relief at that time.

2. **Contrary to Defendants' Contention, even if Plaintiff Loses His Benefits Claim, He Would not Automatically Lose the 510 Claim.**

Defendants' argument that loss of the benefits claim precludes the 510 claim subverts the entire purpose of Section 510, which is to "prevent persons and entities from taking actions which might cut off or interfere with a participant's ability to collect present or future benefits." *Lessard*, 307 F.3d at 1024 (internal quotations omitted).

///

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

The "prototypical claim that Congress intended to cover under Section 510" is an employer's discharge of an employee shortly before his pension would have vested, depriving the employee of rights under the pension plan.  *Ibid.* (citing *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 143 (1990)).  In other words, a 510 claim lies where an employer has interfered with an employee's rights under a benefit plan; the subsequent absence of rights under the plan cannot foreclose the 510 claim.

Likewise, as noted above, the essential element of a Section 510 claim is intent.  Thus, even if there is a reasonable basis to support a benefits denial, that does not excuse an employer's intent to wrongly deny an employee benefits.  *Black v. Long Term Disability Insurance*, 373 F. Supp. 2d 897, 902 (E.D. Wis. 2005) ("If, for example, a fiduciary denied a claim for benefits because of a personal animus toward the plaintiff or for some other improper reason but used a plausible interpretation to justify its action, the plaintiff should not be barred from bringing a [breach of fiduciary duty claim seeking equitable relief] under § 1132(a)(3)").  As similar, here, even if the Court were to find that there was a basis in the Plan to deny Plaintiff's claim for benefits, Plaintiff's claim for equitable relief under Section 510 survives based on Musk and X Corp.'s manifest intent to interfere with his ability to attain a benefit under the Plan.

The four cases Defendants cite in support of their argument are clearly and easily distinguishable.  Three are cases granting summary judgment (not a motion to dismiss) on Section 510 claims where courts reviewed a full record and determined that the plaintiffs failed to present sufficient evidence to support their Section 510 claims.  Mot. at 11 (citing *Pendleton v. QuickTrip Corp.*, 567 F.3d 988, 993 (8th Cir. 2009); *Chambers v. Travelers Cos.*, 668 F.3d 559, 567 (8th Cir. 2012); and *Teumer v. Gen. Motors Corp.*, 34 F.3d 542, 545 (7th Cir. 1994)).  Further, *Pendleton*, *Chambers*, and *Teumer* did not involve alternative claims under Sections 510 and 502(a)(1)(B).

The other case Defendants cite is a decision on a motion to amend the judgment. *Lillywhite v. AECOM*, 2020 WL 13628211, at *1 (W.D. Wash. Dec. 23, 2020).  In *Lillywhite*, the court reaffirmed its grant of summary judgment because defendants "provided uncontroverted evidence that Plaintiff was terminated for cause."  *Id.* at *2.  As different, here, the Court must

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

1   take as true Plaintiff's allegations that Defendants did not have cause to terminate him.

2   **3.   Courts Commonly Allow Claims for Benefits to Proceed Concurrently with Section 510 Claims.**

4   Defendants' arguments rest on the premise that Section 510 claims are inherently

5   incompatible with claims for benefits under Section 502(a)(1)(B), but they do not cite a single

6   case so holding.  Mot. at 10–12.

7   Contrary to Defendants' argument, courts regularly allow Section 510 claims and Section

8   502(a)(1)(B) benefits claims to proceed at the same time.  *See, e.g., Tolle v. Carroll Touch, Inc.*,

9   977 F.2d 1129, 1133–35 (7th Cir. 1992); *Johns v. Ng*, 2012 WL 4497770, at *1–3 (N.D. Cal.

10  Sept. 28, 2012); *La Fata v. Raytheon Co.*, 223 F. Supp. 2d 668, 671–75 (E.D. Pa. 2002);

11  *Cockerill v. Corteva, Inc.*, 2022 WL 3099771, at *7–8 (E.D. Pa. Aug. 4, 2022); *Love v. Talbert*

12  *House*, 2020 WL 6440256, at *2–3 (S.D. Ohio Nov. 3, 2020); *Bowen v. Nationwide Mut. Ins.*

13  *Co.*, 2019 WL 4412805, at *1, *4–5 (M.D. Pa. Sept. 16, 2019).

14  There are also many cases in which benefits claims and claims for equitable relief under

15  Section 502(a)(3), the enforcement provision for Section 510, have been allowed to be pled

16  and/or proceed in parallel.  *See Moyle v. Liberty Mutual Retirement Benefit Plan*, 823 F.3d 948,

17  959–962 (9th Cir. 2016) (explaining that this conclusion comports with the Federal Rules of Civil

18  Procedure, which allow pleading alternative forms of relief, and "is consistent with ERISA's

19  intended purpose of protecting participants' and beneficiaries' interests."); *Silva v. Metro. Life*

20  *Ins. Co.*, 762 F.3d 711, 727 (8th Cir. 2014) ; *Zisk v. Gannett Co. Income Prot. Plan*, 73 F. Supp.

21  3d 1115, 1121 (N.D. Cal. 2014) (same).

22  Defendants suggest that claims challenging the characterization of a termination (*i.e.*, for

23  cause or not) are only cognizable under ERISA § 502(a)(1)(B), not Section 510.  Mot. at 11

24  (quoting *Chambers*, 668 F.3d at 567).  But *Chambers* did not so hold: as noted above, there was

25  no 502(a)(1)(B) claim in *Chambers*.  And as the lower court decision affirmed by *Chambers*

26  explains, the plaintiff, at the summary judgment stage, had not "satisf[ied] her burden to show

27  that [the employer's] articulated reason for terminating her was in fact pretextual and that

28  interference with her ERISA benefits was a determinative factor in her termination." *Chambers v.*

14

*Travelers Cos.*, 764 F. Supp. 2d 1071, 1092 (D. Minn. 2011).  Here, Caldwell has clearly alleged that his termination was specifically intended to strip him of rights under the Plan and Defendants have not asserted that the stark facts alleged are insufficient to establish a *prima facie* 510 claim.

Defendants also rely on *Teumer*, Mot. at 11-12, but it is likewise inapposite.  In *Teumer*, an employee sued *only* under Section 510 to recover layoff benefits. 34 F.3d at 544.  He alleged that his employer characterized his layoff as due to a "plant consolidation" rather than a "plant closing" to deny him the benefits.  *Id.* at 544-545.  The court noted the Seventh Circuit's rule that Section 510 protects only "changes in one's employment status" and the characterization of the layoff was not itself a change in employment status.  *Id.* at 545 (emphasis omitted).  But in the Ninth Circuit, unlike the Seventh Circuit, Section 510 claims are not limited to changes in employment status.  *See Lessard*, 307 F.3d at 1024-25.

Further, the *Teumer* court held that because the layoff benefits the plaintiff sought were obtainable through a claim for benefits, he had simply "misidentified the governing legal theory" and dismissed the 510 claim.  34 F.3d at 545.  Here, in contrast, Plaintiff's Section 510 claim seeks something different from his benefits under the Plan, including front pay and disgorgement of "the 'proceeds' from disposing of particular property as well as 'profits derived' from the illicit use of that property."  *Depot, Inc.*, 915 F.3d at 664 (citing *Harris Tr. and Sav. Bank v. Saloman Smith Barney, Inc.*, 530 U.S. 238, 250 (2000)).  Rather than clarify appropriate legal theories, then, dismissing Caldwell's Section 510 claim here would prevent him from obtaining separate relief for which he has properly stated a claim.  *See Teumer*, 34 F.3d at 545; section A(ii), (iii) *supra* [front pay and disgorgement arguments].

Finally, this case is factually different from *Teumer*: Mr. Caldwell was entitled to benefits due to his Good Reason resignation and it was only Musk's after-the-fact decision to terminate him for Cause that divested him of benefits according to Twitter/X.

## V. __CONCLUSION__

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss.[5]

///

_____

[5] If the Court grants any part of the Motion, Plaintiff requests leave to amend under Federal Rule of Civil Procedure 15.

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

DATED:  July 15, 2024

Respectfully submitted,

RUDY, EXELROD, ZIEFF & LOWE, LLP

By: _____

DAVID A. LOWE
ZOË R. DEGEER
*Attorneys for Plaintiff*
*Nicholas Caldwell*

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:24-CV-02022-MMC