1                    UNITED STATES DISTRICT COURT

2                  NORTHERN DISTRICT OF CALIFORNIA

3         Before The Honorable Maxine M. Chesney, District Judge

4

5   NICHOLAS CALDWELL,                )
                                      )
6            Plaintiff,               )
                                      )
7   vs.                               )    No. C 24-02022-MMC
                                      )
8   ELON MUSK, et al.,                )
                                      )
9            Defendants.              )
    _____)

10

11                                    San Francisco, California
                                      Friday, July 12, 2024
12

13      TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
                RECORDING 11:19 - 11:53 = 34 MINUTES
14

    APPEARANCES:
15

    For Plaintiff:
16
                                  Rudy, Exelrod, Zieff & Lowe,
17                                  LLP
                                  351 California Street
18                                Suite 700
                                  San Francisco, California
19                                  94104
                              BY: DAVID A. LOWE, ESQ.
20                                ZOE R. DEGEER, ESQ.

    For Defendants:
21
                                  Morgan, Lewis & Bockius, LLP
22                                1111 Pennsylvania Avenue, NW
                                  One Market, Spear Street Tower
23                                San Francisco, California
                                    94105
24                            BY: ABBEY M. GLENN, ESQ.

25

2

1  Transcribed by:                Echo Reporting, Inc.
                                  Contracted Court Reporter/
2                                 Transcriber
                                  echoreporting@yahoo.com
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

<u>Friday, July 12, 2024</u>                                    <u>11:19 a.m.</u>

                    P-R-O-C-E-E-D-I-N-G-S

                         --oOo--

          THE CLERK:  Calling Civil Case Number 24-2022,

Nicholas Caldwell versus Elon Musk, et al.

     Will counsel please state your appearances, starting

with Plaintiff's counsel.

          MR. LOWE (via Zoom):  Good morning, your Honor.

David Lowe appearing for Plaintiff Nicholas Caldwell.

          THE COURT:  Thank you.

          MS. DE GEER (via Zoom):  Good morning, your Honor.

Zoe DeGeer appearing for Plaintiff as well.

          THE COURT:  Very good.  Thank you.

          MS. GLENN:  Good morning, your Honor.  Abbey

Glenn, Morgan Lewis, appearing on behalf of the Defendants.

          THE COURT:  Hi.  So, here you are.  You folks

didn't give me a chambers copy either.

          MS. GLENN:  Your Honor, I apologize for that.

That was the Defendants who filed it, and -- and I

apologize.

          THE COURT:  Okay.  Please in the future give us

those.  All right.  So, I'm just quickly going through.

This case is very much, as you know, like the Agrawal -- I

can't pronounce that guy's name.  I want to change the G and

the R and move them around to make it easier to say, but is

4

1  it Agrawal?

2          MR. LOWE:  It is, your Honor.

3          THE COURT:  It's just so tongue twisty, but

4  anyway.  This case is very much like it, and I am -- they

5  have filed a motion very much like the motion that's been

6  filed here, and I've issued an order that you may be aware

7  of that is moving both of those motions to the same date,

8  and they had to move to the later date.  So, they would be

9  heard, if they are heard, on the -- on the Caldwell motion

10 date.  It's the same motion essentially, maybe a slight

11 difference at one point where one has a little more than the

12 other to argue but pretty much the same idea.

13     Okay.  So, let me go to where we have this -- where am

14 I?  Give me a second -- this related case idea, all right.

15 Right now, Agrawal and Caldwell came to me on the natural

16 and could be related as appropriate or not.  It doesn't mean

17 they're going to be tried together, but for whatever issues

18 might be similar, they could be perhaps heard.

19     But then there's the Kayden (phonetic) case with Judge

20 -- let's see, who has that.

21          MS. GLENN:  I believe it's Judge Gonzalez, your

22 Honor.

23          THE COURT:  Right.  It's -- somebody wrote YMG.

24 Wouldn't she be YGR?  Well, anyway.  Let's assume that

25 that's who it is.  All right.

5

1      Now, are you both of the view that this is a related

2  case?

3      (No response.)

4          THE COURT:  I'll pick someone and ask them.  Mr.

5  Lowe?

6          MR. LOWE:  Yes, thank you.  So, it's the same

7  plan, and there are similar arguments.  So, they are related

8  in that sense.  They're not identical facts obviously.

9          THE COURT:  Well, no, because each of these people

10 has got a little different situation.  But the overarching

11 concept is you wanted to get rid of us so that you wouldn't

12 have to pay us benefits.  You're not happy with us after

13 this whole merger thing and -- okay.

14     Ms. Glenn, do you disagree as to the relationship idea?

15         MS. GLENN:  Well, it's true that Mr. Kayden was a

16 Twitter employee and asserts claims under the same plan.

17 However, the claims don't necessarily align.  For instance,

18 Mr. Kayden does not assert a claim under 29 U.S.C. 1140,

19 unlike Mr. Caldwell here.  So, there are some distinctions

20 in terms of the causes of action in addition to the facts.

21         THE COURT:  Well, but if you -- if one of you

22 think it's related, under our Local Rules, you need to make

23 a motion to relate the cases, and was one or the other of

24 you planning on doing that?

25         MR. LOWE:  We can certainly do that, your Honor.

6

 1          THE COURT:  Well, okay.  Since you sound a little
 2 bit more confident about thinking it may be related, and
 3 obviously there may be differences all along the way here,
 4 but if there -- and I would look at it if there's a dispute
 5 over whether it's related, and I -- even if there wasn't, I
 6 would look at it to decide whether I ought to take it, but
 7 it's just interesting that two cases just kind of fell into
 8 one court and avoided that problem.  But if you do move
 9 then, I guess you would say -- you would want to say it's
10 related to both, and the -- the way you do that -- and you
11 probably know that -- is you file the motion here, and you
12 can give notice to the other cases by filing that motion in
13 those cases essentially.

14      There's a -- there's a Civil Local Rule on this that
15 kind of lays it out.  So, all right.  It may be that, you
16 know, all of the employees who essentially ended up out
17 would have a similar idea going on.

18      You're not representing, though, that Plaintiff, are
19 you, Mr. Lowe?

20          MR. LOWE:  I am not personally, but my partner,
21 Chaya Mandelbaum is.  So, our firm --

22          THE COURT:  Oh, he is?

23          MR. LOWE:  He is.

24          THE COURT:  So, your firm's in the case?

25          MR. LOWE:  That's correct.

7

1          THE COURT:  Oh, okay.  Fine.  Well, that's another

2  reason in a way not to have everything scattered around, but

3  I'd still want to look at it.

4          Now, looking at the schedules you have here, if there

5  is going to be a relation, we have actually a trial schedule

6  I think in -- where is this -- in Agrawal, what I have is a

7  briefing schedule on Rule 52 motions, all right, which I

8  would think ordinarily would be appropriate to the extent

9  that we're dealing with some kind of administrative record,

10 but there seem to be claims that also may be outside of

11 that, and we didn't account for those in any particular way

12 in that case.  But then it looks like in this case, the

13 Plaintiff at least is thinking, Oh, we may have both a Rule

14 52 motion and a Rule 56 motion that could be -- or maybe

15 it's the -- no, I think it's the Plaintiff.  Let me see.

16 The Plaintiff has Rule 56 and -- is there a Rule -- oh, no.

17 Then -- but you don't have a Rule 52.

18         Well, to the extent there's administrative ERISA type

19 case, then we're looking at Rule 52.  It's not -- it's a

20 judgment, not summary judgment.  But for some of these other

21 claims, there may be a Rule 56 motion.

22         I'm not sure what to do with this.  If we're actually

23 going to bring in a third case, maybe we should get

24 everybody together and try and figure out whether we could

25 get on sort of one coordinated page.  Alternatively, I could

8

1 set Rule 52 motions in this.  I'm not sure about Rule 56,

2 and certainly we don't want to do like a trial at this point

3 till we know what's going on.

4      Anybody got any thoughts on this?

5      MR. LOWE:  Yes.  Thank you, your Honor.  So, as

6 I've thought about this case and the various issues in

7 dispute, I'm not confident that this case would be

8 appropriate for a Rule 56 motion, but we thought it

9 advisable to build into the schedule the timing for one in

10 the event that through discovery it appeared that there were

11 issues that could be resolvable on a Rule 56 motion.

12      With respect to Rule 52, I -- I take your Honor's point

13 that in a typical ERISA case, that would be the appropriate

14 methodology for getting to a judgment.  I'm not sure about

15 this case, whether that's more efficient than just a bench

16 trial, and the reason is because there are going to be, I

17 anticipate, a significant number of disputed facts and

18 evidence being taken regarding the extent of the conflict of

19 interest on the part of the plan administrator and the

20 Review Committee that probably makes sense to resolve in a

21 bench trial format as part of determining the standard of

22 review that then would be applied to the decision by the

23 plan administrator.  And, additionally, our position,

24 Plaintiff's position is that the -- there should -- the

25 administrative record should be supplemented by additional

9

1  evidence and that --

2          THE COURT:  But it's a different question again.

3  All right.  Let me back up for a minute before you get too

4  far down this road.  Okay.

5      If the plan has built into it magic words that make it

6  a discretionary -- abusive of discretion standard, my

7  understanding is that stays, but if there are conflicts

8  arguably, then that those sort of affect how much the Court

9  raises its eyebrow in looking at whether somebody has abuse

10 of discretion, in other words, with a somewhat more critical

11 eye, but that it doesn't change the standard of review.

12 Now, I may be wrong about that, but at least that's --

13 that's my sort of initial understanding.

14     That could all be briefed in the Rule 52 motion without

15 the Court necessarily finding that one person is doing

16 something in the context of a court trial because it's

17 supposed to be a review on the -- the record.

18     The other question is whether there should be more

19 evidence.  Usually what happens in a sort of typical case,

20 which this isn't, okay, if you had a typical case, it's that

21 the claimant is trying to present something to the

22 administrative body and they won't take it, and it's

23 important, and then they get to put it in.  If they should

24 have been allowed before, then they get to put it in now.

25 But just opening the thing up sort of open city, I don't

10

1  know that that works, and I would have to see authority that

2  would allow for it.

3      Before we would need to get into the question of

4  whether anybody's entitled to have a trial, I think we would

5  start with Rule 52 motions.  Now, when we set them in the

6  other case, we set those to be in April, late April of 2025.

7  In this particular instance, the Defendant is choosing a

8  date that is about, let's see, oh, about five and a half

9  months or so, maybe six months farther off.  And is there a

10 reason for that, Ms. Glenn?

11      MS. GLENN:  Yes, your Honor.  Number one, there

12 are some different claims here at issue in Caldwell than

13 there are in Agrawal, including breach of contract and

14 breach of implied covenant of good faith and fair dealing.

15 And, quite frankly, because we will be briefing 52 motions

16 in Agrawal, you know, a trial on the papers, as your Honor

17 knows very well, with four different Plaintiffs there, it's

18 going to be an all-consuming process for not only the

19 lawyers who are the same in both cases but our client, and,

20 you know, dealing with all that briefing and -- and the

21 evidence that your Honor's going to consider, that's one

22 reason why we suggested that the Rule 52 briefing take place

23 later in the Caldwell case.  The other one is because of

24 Plaintiff's proposed expert discovery.  When we were meeting

25 and conferring over the proposed schedule, we asked Mr. Lowe

11

1  at this point what kind of expert discovery he was

2  contemplating, and one of the things that he mentioned --

3  and I understand it's early on in the case, but one of the

4  things that he mentioned is that they may want some expert

5  opinion regarding whether the severance plan benefits here

6  include accelerated equity vesting.  And that goes directly

7  to the severance benefits claim under ERISA 502(a)(1)(B),

8  his primary claim here, that would be addressed at the heart

9  of the Rule 52 motion.  And, so, we thought we need to build

10  in time for that expert discovery to be addressed at the

11  Rule 52 briefing.

12          THE COURT:  In other words, you're thinking that

13  the Court might be required to actually figure out the

14  benefit as opposed to simply ordering that he be put back on

15  the plan?

16          MS. GLENN:  Well, as best I understand, what Mr.

17  Lowe was suggesting and thinking that he may want to rely on

18  that expert opinion in addressing the merits of his

19  severance benefits claim in the Rule 52 briefing.

20          THE COURT:  Yeah.  I'm just not sure whether the

21  Court would -- ordinarily would be required to figure out

22  that amount as opposed to finding that he's entitled, for

23  example, if he were and then having them start paying him

24  severance benefits and then he could complain about they,

25  you know, short changed him at that time.  I don't know.  I

12

1 mean, I'm just saying there are a lot of different things
2 that are being raised.  If I were to do the Rule 52 motion
3 in Agrawal -- great, now that I see what you're doing with
4 the R, okay.  If that's how he's saying it, that's how I can
5 do that.  Okay -- that it's -- it's going to decide in some
6 instances -- almost decide some of the issues that would
7 crop up here.  They wouldn't necessarily be the same, but
8 it's the same motive that's being asserted here for
9 everybody pretty much.  So, I -- I'm just kind of curious.
10       Should we do that, I mean, set something now?  And, as
11 Mr. Lowe says, maybe I'll want to hear witnesses in some
12 fashion, in some kind of ancillary -- you know, usually I --
13 I don't have separate briefing on the standard of review
14 because it is what it is, and then usually you don't have
15 anything quite this traumatic being raised as a conflict.
16 There's often a structural conflict or something that's, you
17 know, not really personal, and here there's a whole
18 different idea, but it's just too early for me to really
19 figure that out and where that's going to go and whether I
20 need to hear any people or not.
21     Okay.  So, is it premature to try and set like Rule 52
22 briefing like we did in Agrawal or -- I don't know.
23          MR. LOWE:  Speaking for Plaintiff Caldwell, I
24 don't think it's too early to set a schedule.  Certainly, we
25 may want to come in for a further status conference and --

13

1  and discuss with the Court what is the most efficient way to

2  pursue this case.  I think that, you know, certainly we

3  agree with -- with the Court's perspective on the ordinary

4  of these cases in a typical ERISA action.

5          THE COURT:  Right.

6          MR. LOWE:  This is decidedly not --

7          THE COURT:  Not typical.

8          MR. LOWE:  -- a typical ERISA action.  And, in

9  fact, I think it does fall within what the Abatti court

10  describes as that rare category of cases where we believe

11  the evidence is going to show that although there was a

12  veneer of an ERISA process where they went through the

13  motions, in fact, it truly was a sham.  There was no true

14  exercise of discretion such that de novo review would be

15  appropriate.  Even if the Court disagrees with that after

16  hearing the evidence, we believe that the existence and the

17  extent of the conflict and the shifting reasons given for

18  denial and all of the various factors in Abatti that call

19  for a much heavier level of skepticism and lower level of

20  deference --

21          THE COURT:  Yeah.

22          MR. LOWE:  -- are -- are factual matters that the

23  Court is going to want to hear.  So, I agree with the Court

24  that it may be premature to know whether those need to be

25  done in a bench trial or whether they can be managed in a

14

1 Rule 52 process, but it's -- it's not a typical ERISA case.

2 So, I think we just --

3          THE COURT:  Oh, I think everybody recognizes that.

4      (Simultaneous speaking.)

5          THE COURT:  Yeah, but I don't want you arguing the

6 whole thing now, all right, because then I got to give Ms.

7 Glenn equal time.

8          MR. LOWE:  Sure.

9          THE COURT:  I don't want to have to do that.  So,

10 no, I understand your point that this is a sham.  You know,

11 it's like a kangaroo court, and they've appointed -- you

12 know, he's appointed his buddies to dump on everybody and

13 then Ms. Glenn said, Well, look, they found one of these

14 claims, you know, wasn't of misfeasance or malfeasance,

15 wasn't well taken.  So, that shows they're fair.  And then

16 you can say, Yeah, they just did that as a cover up.  I

17 mean, I can hear all of this at some point, but the main

18 thing is I need to set -- or I don't need to set, but if you

19 would like me to, I can set a Rule 52 schedule, and then if

20 you file your motion to relate, which I think, you know, if

21 you're going to file it, that that motion, unless you've got

22 something really pressing going on, ought to be filed by at

23 least I'd say July 26 or the Monday after maybe, July 29,

24 unless you've got something you really have to do.

25          MR. LOWE:  July 29 is fine.

15

1          THE COURT:  Fine.  Okay.  And you can file it any
2  time before that, but just to -- let's get that going.  Now,
3  once that happens, then we're going to have to set some kind
4  of a status or Case Management Conference in that case, and
5  if I do that, should I get all the cases back together at
6  that point or just do that case, if I relate them, and I
7  haven't made that decision yet, but if I do?  Should -- or
8  -- no.  In other words, we're just doing this one
9  separately.  Should I just do that one separately, you know?
10          MS. GLENN:  Your Honor, if you'd permit me for a
11  moment, I think, especially given where we are right now, we
12  haven't -- there's no determination as to whether the cases
13  are related.  Our view I think is that if there's going to
14  be Rule 52 briefing, that would be the appropriate time for
15  the Plaintiff to address any motions under Rule 56 as well
16  and do -- you know, combine briefing, even if it's under
17  separate rules of Civil Procedure and a different standard,
18  do it all together and not piecemeal, and -- and then, you
19  know, if there's anything left after that, we can determine
20  whether some sort of bench trial is necessary, but it may
21  not be necessary.
22          THE COURT:  All right.  Apropos of my question,
23  when -- if -- I haven't said I'm going to relate it.  If I
24  relate the Kayden case, it need a conference, then case
25  management initial, just like we're having in Caldwell, and

1  the question is should I bring everybody back at that time

2  on all three cases or just have the one, you know, case

3  management much as we're doing now in Caldwell in the Kayden

4  case?

5  　　　　　MS. GLENN:  I think our position is that we should

6  treat them as individual cases as -- because we already have

7  a schedule set in the Agrawal case.  There were Plaintiffs

8  there, more -- there's a lot -- there's going to be more

9  evidence.  It's a larger administrative record, that sort of

10 thing, and there are some issues that differ between them.

11 So, I think --

12 　　　　　THE COURT:  Okay.  The answer is don't bring them

13 all in.  All right.

14 　　　What do you think, Mr. Lowe?

15 　　　　　MR. LOWE:  I agree with that for now.  I

16 certainly --

17 　　　　　THE COURT:  Fine.

18 　　　　　MR. LOWE:  Yeah.

19 　　　　　THE COURT:  Fine.  We'll just do the one case --

20 thank you.  We'll just do the one case, and we will see how

21 that looks, if I -- if I relate it.  I may look at it and

22 say sorry, you know, this -- I'm not taking this one.  Okay.

23 　　　Now, but I might.  Anyway, in this case, Ms. Glenn

24 feels that there's enough thing of a more idiosyncratic

25 nature versus the Agrawal case that we should set this

17

1 farther off, considerably farther off than we set the

2 briefing on Rule 52 for Agrawal.  So, then, what's your view

3 of that?  Because you didn't have a Rule 52 motion.  You had

4 Rule 56, which was coming up even -- let's see, coming up

5 considerably earlier than what --

6          MR. LOWE:  Yes.

7          THE COURT:  -- she was suggesting for Rule 52.

8          MR. LOWE:  Defense Counsel's schedule trails our

9 proposed schedule by a couple of months.  I'm -- you know, I

10 -- at the end of the day I'm not sure it's going to be a

11 huge difference.  We would like to get the Rule 52 motions I

12 think decided and -- and know whether we're going to have a

13 -- a trial by the end of next year.  I really would like to

14 keep it in 2025 if possible rather than leading into 2026 by

15 a few months.  That would be my -- my preference and I'm

16 sure Mr. Caldwell's preference.  I appreciate that -- that

17 there are some differences between our case and the Agrawal

18 cases, but I don't think they're all that significant, and

19 the expert issue I think is pretty contained.  I don't think

20 it's going to be very time consuming.  So, I would prefer a

21 bit shorter schedule, but we'll defer to the Court on what

22 -- what you think.

23          THE COURT:  I don't know enough about this case to

24 really know whether some of the gloom and doom that's being

25 predicted by Ms. Glenn is -- is going to pan out or not.

18

1      The other case is scheduled to be heard in the Fall of

2 this -- of 2025, in other words, not going over to 2026.

3 And the spread as far as who had to file what when was --

4 I'm going to see if it's -- did you look at that when you

5 were picking these dates here or not, Ms. Glenn?

6          MS. GLENN:  We did.  The briefing -- the Rule 52

7 briefing in Agrawal ends on August 8th, and the hearing is

8 September 12th, and --

9          THE COURT:  Um-hmm.

10          MS. GLENN:  And that's why we were thinking if we

11 are rolling into Rule 52 motion briefing in Caldwell, we

12 wanted to give them enough time to, you know, assess any

13 expert evidence that we -- you suggested should conclude at

14 the end of August.

15          THE COURT:  Well, my only question was I didn't

16 quit check out -- like, for example, you're recommending

17 October 10 for the motion and November 14 for the

18 opposition, which is about a month spread between the two,

19 and I was just checking to see whether the relative time

20 frames were the same.  So, you have April 25 and June 6.

21 So, it's actually --

22          MS. GLENN:  I think it's --

23          THE COURT:  -- farther off.

24          MS. GLENN:  I misunderstood, your Honor.  Yeah.

25 It's --

1          THE COURT:  That's all right.

2          MS. GLENN:  -- longer on Agrawal than it is as we

3  proposed here on Caldwell.

4          THE COURT:  You're tighter in Caldwell.

5          MS. GLENN:  That's right.  We've tried to make it

6  faster.  That's right.

7          THE COURT:  Um-hmm.  Well, why don't we start with

8  this, and then if it looks like it's just not working, well,

9  then we'll do something.

10     So, the -- for your minutes then, Ms. Geiger, the Rule

11 52 motion schedule is filing October 10 -- this is all 2025

12 -- opposition November 14, reply December 19 -- well, it's

13 reply, opposition I guess because these are cross-motions.

14 So, it actually motion by the Plaintiff, then Defendants'

15 opposition, cross-motion, then the Plaintiff's reply and

16 then slash opposition.  That would be December 19, and then

17 the last brief, Defendants' reply, January 23, and then the

18 hearing February 13.  Okay.  Let me just double check.

19 That's in '26.  January 13 is a Tuesday.  Oh, well.  Oh,

20 well.  All right.  Oh, it's because it isn't the 13th.  It's

21 the 23rd.  Sorry.  January 23 and then February 13th.  Okay.

22     If you wanted to look at that, that starts on line 14

23 and goes to line 20 on page 11 of Document 39.

24          MS. GLENN:  Okay.

25          THE COURT:  That describes these various briefs

1 essentially.

2     Okay.  Then I'd like to know what I did in Agrawal when

3 they were -- did I give them -- or you folks a date to come

4 back other than the briefing and the hearing or was that it?

5 That just may be the tickler, and we could have that in this

6 also.

7             MR. LOWE:  That's fine, your Honor.

8             MS. GLENN:  That's fine, your Honor.

9             THE COURT:  All right.  Okay.  That's something

10 done, and then this may expand in some way as we go along.

11     What about ADR in these cases?  Is there any room for

12 that at all?

13             MR. LOWE:  I think there is, and I can't speak for

14 any of the other Plaintiffs, but -- but I don't think Mr.

15 Caldwell is ideologically opposed to settlement discussions.

16 We've conveyed to defense counsel, you know, we feel

17 confident in the claims, and there's a lot of money in

18 dispute.  So, that can be an obstacle, but -- but I think

19 the parties probably know the facts pretty well at this

20 point, and really we're disagreeing about primarily legal

21 issues.

22             THE COURT:  Ms. Glenn, any thoughts?

23             MS. GLENN:  I think there is a possibility for

24 ADR.  I think our position is we'd like to have a ruling on

25 our motion to dismiss first to understand the scope of the

21

1 claims, but certainly it's something we're open to after a

2 ruling.

3          THE COURT:  Okay.  Just as a preview on these

4 motions, which is the second cause of action in Caldwell and

5 the fifth cause of action in Agrawal as I recall -- and it's

6 the same -- same claim, and the arguments are almost the

7 same.  There may be an extra one with one of you -- the idea

8 of somewhat alternative claims like, okay, if we're not

9 entitled to this, then we're still there and we're entitled

10 to that is generally a recognized idea.  In other words,

11 mutually exclusive claims can often be pled in the

12 alternative, and at some point somebody's got to decide

13 something about what they want to do, but -- all right.  But

14 you have an argument that there are certain elements of

15 damages that are not recoverable.  If you killed off all the

16 damages, you could kill off the claim even if nobody was

17 seeking severance benefits.  So, that may be where the focus

18 is more than the other, just for -- giving you a kind of

19 heads up here on what you might want to be talking more

20 about.

21          MS. GLENN:  Thank you, your Honor.

22          THE COURT:  I may be wrong.  I mean, it's just,

23 you know, kind of a preliminary review on my part of, you

24 know, the issues and -- you know.

25     Okay.  So, should we do anything else then this morning

22

1  before you lose me here?

2      (No response.)

3          THE COURT:  Let's see if Ms. DeGeer has anything

4  that's come up in her mind.  You've been listening to

5  everybody.

6          MS. DEGEER:  Just listening intently, your Honor.

7          THE COURT:  Anything you want to add?

8          MS. DEGEER:  No, I don't think so.  Thank you.

9          THE COURT:  All right.  Okay.  Well, going back to

10  lead counsel, anything that you want to do before we leave

11  this endeavor?

12          MR. LOWE:  I don't think so, your Honor.  Our --

13  we are exchanging initial disclosures soon.  We believe

14  there's areas of discovery we can begin on, and -- and

15  that's sort of the next step from our perspective, and then

16  we'll have the motions to -- the motion to dismiss teed up

17  for your Honor coming up soon.

18          THE COURT:  If you were going to do ADR at some

19  point, when -- what would you want to do as a modality do

20  you think?

21          MR. LOWE:  We discussed this a little bit, your

22  Honor.  You know, I think the -- as you pointed out in one

23  of the earlier cases on calendar today, the Northern

24  District has some very talented Magistrate Judges.

25          THE COURT:  They're great.

23

1          MR. LOWE:  We're certainly open to that as well as

2   private mediation.

3          THE COURT:  Okay.

4          MR. LOWE:  It certainly justifies the investment

5   in this case.

6          THE COURT:  I'm not going to make any referral

7   today because -- but I think you should take a look at it,

8   because this case is just going to be like expanding.  It's

9   like a Pandora's Box.  It's going to get bigger and kind of

10  grungier as you go along, and if there's any way to just,

11  you know, get everybody out of each other's lives, that --

12  that would be kind of a plan if you can do it.

13      Well, think about what type modality.  We do have

14  terrific Magistrate Judges.  In some instances their time

15  may be a little more limited than if you were paying someone

16  for their unexhausted amount of time.  But, again, the cost

17  is considerably different.  So you would, you know, want to

18  think about that.  And but just be thinking.  I won't

19  necessarily do anything today unless you wanted me to, and

20  it doesn't sound like you've settled on -- on how you'd want

21  to go about it, right?

22          MS. GLENN:  We have not, your Honor.

23          THE COURT:  Okay.  So, I'm not going to make any

24  reference now.  If you do go with Magistrate Judge, come up

25  with someone jointly that you'd both like to have, okay, so

24

1  that then I can refer it directly to that Magistrate Judge.

2     Okay.  Keep in mind, though, that San Jose is really on

3  a separate wheel.  So, Oakland and San Francisco are pretty

4  much joint, but I usually hesitate to send anything to the

5  San Jose Magistrate Judges because they have their own

6  separate assignment.  I mean, there are a number of types of

7  cases that are district wide, but mostly they're on a

8  separate one, and they're all -- you know, they won't say no

9  if I send it to them, even if it's over burdening them.  So,

10  if you do pick a Magistrate Judge, try to pick someone in

11  either San Francisco or Oakland.  Okay.

12     All right.  Great.  And then if you want private

13  mediation, the whole world is out there.  Everybody is a

14  mediator today.  Everybody wants to mediate.  So, you'll

15  have choices beyond choices.

16     Okay.  Then hearing nothing further, I'm going to

17  conclude the conference.  And, Ms. Geiger, if you want to

18  officially announce where we are, please go ahead.

19          THE CLERK:  Court is in recess.

20     (Proceedings adjourned at 11:53 a.m.)

21

22

23

24

25

25

<u>CERTIFICATE OF TRANSCRIBER</u>

1

2

3      I certify that the foregoing is a true and correct

4  transcript, to the best of my ability, of the above pages of

5  the official electronic sound recording provided to me by

6  the U.S. District Court, Northern District of California, of

7  the proceedings taken on the date and time previously stated

8  in the above matter.

9      I further certify that I am neither counsel for,

10 related to, nor employed by any of the parties to the action

11 in which this hearing was taken; and, further, that I am not

12 financially nor otherwise interested in the outcome of the

13 action.

14

15

16

17          Echo Reporting, Inc., Transcriber

18            Wednesday, August 7, 2024

19

20

21

22

23

24

25